

# IN THE
# TENTH COURT OF APPEALS

## No. 10-09-00054-CV

## IN THE INTEREST OF M.V.G., A CHILD

**From the 413th District Court
Johnson County, Texas
Trial Court No. D200706344**

## O P I N I O N

The mother and father of the child the subject of this suit have each perfected an appeal from the order terminating their parental rights. The mother contends in her sole issue that the evidence is legally and factually insufficient to support any of the predicate grounds for termination or the court's finding that termination is in the best interest of the child. The father contends in five points that: (1) the court erred by denying his request for a jury trial; (2) the court erred by rendering a default judgment against him; (3) the evidence is insufficient to support the termination order; (4) this appeal is not frivolous; and (5) section 263.405 of the Family Code is unconstitutional. We will affirm.

## BACKGROUND

The mother "Patricia"[1] gave birth to M.V.G. in a Galveston hospital while she was incarcerated for a state jail felony. The father "Joel" lived in Cleburne. The day after M.V.G.'s birth, Patricia gave Joel's contact information to CPS caseworker Linda Lawrence and told her that he was making arrangements for M.V.G. to live with him. Two days later, CPS supervisor Marty Samaniego talked to Joel and tried to arrange a meeting. Joel said that he could not talk at the moment because of work, so Samaniego advised him that the Department was taking emergency custody of M.V.G. and there would be an emergency removal hearing. Joel told Samaniego that Patricia and he wanted custody of M.V.G. and planned to move to Puerto Rico where his family lives.

During the next eleven months, the usual hearings were conducted. The Department essentially did not provide services to Patricia for eleven months because of her incarceration. She was released from custody just over ten months after M.V.G.'s birth and returned to Cleburne. The court extended the statutory dismissal date for ninety days. Patricia visited M.V.G. about fourteen times after her release, but she never completed any of the tasks required by the family service plan. At the last hearing before trial, Patricia testified about various difficulties in obtaining these services.

For his part, Joel visited M.V.G. regularly during the first eight months of the Department's involvement but never completed any of the required tasks. He

---

[1] To protect the identity of the child who is the subject of this suit, we shall refer hereinafter to the parents by pseudonyms. *See* TEX. FAM. CODE ANN. § 109.002(d) (Vernon 2008); TEX. R. APP. P. 9.8(b)(2).

disagreed with the Department's efforts to pursue drug screening by a hair follicle test, stating his preference for urinalysis. He filed a motion for visitation which the court heard shortly after M.V.G.'s first birthday. The court denied the motion after Joel informed the court that he would not submit to the hair follicle test.

Joel did not appear for trial. Patricia announced that she was waiving her right to jury trial. The court ruled that Joel waived his right to jury trial under Rule of Civil Procedure 220 by failing to appear. *See* TEX. R. CIV. P. 220. The court also pronounced its rendition of "a post answer default judgment" against him. At the conclusion of a three-day bench trial, the court rendered judgment terminating Patricia's parental rights. The court signed its Order of Termination almost three weeks later.

## PATRICIA'S APPEAL

In her sole issue, Patricia contends that the evidence is legally and factually insufficient to support any of the predicate grounds for termination or the finding that termination is in the best interest of the child.

> In a legal sufficiency review, a court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible.

*In re J.F.C.,* 96 S.W.3d 256, 266 (Tex. 2002); *In re T.N.F.,* 205 S.W.3d 625, 630 (Tex. App.—Waco 2006, pet. denied).

In conducting a factual sufficiency review, "a court of appeals must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *Id.*

> [T]he inquiry must be "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." A court of appeals should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient.

*J.F.C.*, 96 S.W.3d at 266 (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)) (footnotes omitted); *T.N.F.*, 205 S.W.3d at 630.

CPS alleged and the trial court found four predicate grounds for termination, namely, that Patricia: (1) knowingly placed or allowed M.V.G. to remain in dangerous conditions or surroundings; (2) engaged in conduct or knowingly placed M.V.G. with persons who engaged in conduct which endangered her; (3) constructively abandoned M.V.G.; and (4) failed to comply with a court order that established the actions necessary for the return of M.V.G. *See* TEX. FAM. CODE ANN. § 161.001(1)(D), (E), (N), (O) (Vernon Supp. 2009). We may affirm if the evidence is sufficient with respect to any one of these predicate grounds. *T.N.F.*, 205 S.W.3d at 629.

### Constructive Abandonment

> A parent constructively abandons a child when (1) the child has been in the permanent or temporary managing conservatorship of the State or an authorized agency for not less than six months, (2) the State or the authorized agency has made reasonable efforts to return the child to the parent, (3) the parent has not regularly visited or maintained

significant contact with the child, and (4) the parent has demonstrated an inability to provide the child with a safe environment.

*In re M.R.J.M.*, 280 S.W.3d 494, 505 (Tex. App.—Fort Worth 2009, no pet.); *accord Earvin v. Dep't of Family & Protective Servs.*, 229 S.W.3d 345, 348 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *see* TEX. FAM. CODE ANN. § 161.001(1)(N).

## *(1) Purposeful Abandonment*

With regard to the first element, Patricia concedes that M.V.G. was in foster care for at least six months but disputes that M.V.G. was in foster care because of any purposeful abandonment on Patricia's part. *See Earvin*, 229 S.W.3d at 349 (no evidence parent "purposefully had little interaction with S.M.E."). Patricia refers to evidence that Joel and she planned for him to get M.V.G. from the hospital and take her to Puerto Rico where they would live with their extended family. Patricia argues that they never had a chance to carry out their plans because the Department did not contact Joel before removing M.V.G. even though she had given his contact information to CPS caseworker Lawrence at the hospital. CPS investigator Tina Herrera confirmed in her testimony that she did not contact Joel until after taking custody of M.V.G. However, she arranged for Joel to visit M.V.G. a few days after she was brought to Cleburne.

Joel attended the emergency removal hearing the next day. He told the court of his plans to leave for Puerto Rico thirteen days later and asked if he could take M.V.G. with him if he had a "clean" drug test. The court advised that another hearing would need to be held and, if Joel had "some clean drug tests," then the court would consider his request. Joel did not take a drug test and left for Puerto Rico. He did not appear in

court again until six months later. He submitted to only one drug test (by oral swab) during the fourteen months the case was pending, refused to submit to urinalysis or hair follicle drug tests ordered by the court, and wholly failed to comply with his service plan.

Imprisonment, standing alone, does not constitute constructive abandonment. *In re D.T.*, 34 S.W.3d 625, 633 (Tex. App.—Fort Worth 2000, pet. denied); *see In re N.S.G.*, 235 S.W.3d 358, 367 (Tex. App.—Texarkana 2007, no pet.).

> [But] it is simply a "cop-out" (in the vernacular of the 70's) for anyone to conclude that prison *ipso facto* prevents (or relieves) the parent from providing the child a safe environment. Again, the incarcerated parent may be able to work through surrogates, such as relatives, spouses, or friends, to fulfill that obligation. And, if he so arranges and those surrogates agree to the arrangement, it is hard to deny that the parent has taken steps to provide or effectively provided a safe environment. To suggest otherwise would be to suggest that military personnel cannot provide for their children because they may be assigned overseas to combat duty. In that situation, family is often available to step in and help. The same can be no less true when a parent is incarcerated.

*In re D.S.A.*, 113 S.W.3d 567, 573-74 (Tex. App.—Amarillo 2003, no pet.).

Here, Patricia made arrangements for Joel to take custody of M.V.G. during her incarceration, but he failed to take the necessary actions to gain custody. Patricia also informed the Department that relatives in Puerto Rico might be able to care for M.V.G. However, CASA volunteer Gloria Johnson testified that she talked to one of those relatives and was convinced from that conversation that there was no appropriate or safe environment available for M.V.G. in Puerto Rico.[2]

---

[2] Joel's mother lives in Puerto Rico and currently has custody of eight of Patricia's and his other children.

Considering all the evidence in a neutral light, we hold that the evidence is such that the court "could reasonably form a firm belief or conviction" that Patricia constructively abandoned M.V.G. by leaving her in Department custody for at least six months without providing an alternative, safe, and appropriate custody arrangement for her. *See D.S.A.*, 113 S.W.3d at 572 (evidence factually sufficient where incarcerated parent's mother testified that a relative would take the children but it never happened). Thus, the evidence is factually sufficient on this element, and because the evidence is factually sufficient, it is necessarily legally sufficient. *Id.* at 573.

*(2) Reasonable Efforts to Return the Child*

The second element is whether the Department "made reasonable efforts to return the child." TEX. FAM. CODE ANN. § 161.001(1)(N)(i). Patricia contends that the Department failed to make reasonable efforts because: (1) it did not formally serve her with citation until three months after taking M.V.G.; (2) it did not provide services for her while she was incarcerated; (3) the assigned caseworker sent letters to her in English even though she speaks Spanish; (4) the Department contacted only one other family member for alternative placement; and (5) it failed to arrange transportation for her to obtain counseling and other required services.

"The State's preparation and administration of a service plan for the parent constitutes evidence that the State made reasonable efforts to return the child to the parent." *M.R.J.M.*, 280 S.W.3d at 505; *accord M.C. v. Tex. Dep't of Family & Protective Servs.*, 300 S.W.3d 305, 309-10 (Tex. App.—El Paso 2009, pet. denied); *Liu v. Dep't of*

*Family & Protective Servs.*, 273 S.W.3d 785, 795 (Tex. App.—Houston [1st Dist.] 2008, no pet.).

We first observe that Patricia relies in part on testimony from various pretrial hearings to show that the Department had failed to promptly conduct a home study of Joel's mother's home in Puerto Rico, had been given the names of "more than one" relative to contact but only contacted one,[3] and had assured the court that it would provide services to Patricia while she was incarcerated. She also relies on her own testimony from a December permanency hearing to show that the Department had notice that she did not have reliable transportation to drive to Dallas or Fort Worth for Spanish counseling and other services. However, this testimony was not admitted at trial. *See In re C.L.*, No. 10-09-00117-CV, 2009 WL 3319932, at *4-5 (Tex. App.—Waco Oct. 14, 2009, no pet.) (evidence legally insufficient to support termination where trial court did not take judicial notice of prior orders or hearings).

Nevertheless, the testimony at trial established that the Department provided no services to Patricia while she was incarcerated, but CPS caseworker Tonya Gilley testified that the Department had no contract services available at the state jail where she was located. Upon Patricia's release, a visit with M.V.G. was arranged for her within a week. She received her first service plan about two weeks later on October 15. She had more than three months to work on the tasks set out in the service plan but failed to do any of them.

---

[3]     In fact, the caseworker testified, "The only relatives [sic] available that I've been given [who] are in Puerto Rico is [sic] the grandmother that had received the previous children."

Patricia testified that she does not understand the English language and could not read the letters sent to her by caseworkers, but Gilley testified that Patricia had communicated in the past with limited English. In any event, once Patricia was released, a Spanish translator was provided whenever she met with the caseworker, and Spanish language services were made available to her as well.

Regarding transportation, Patricia testified that she asked the Department for help with transportation, but CPS Diann Ames testified that she did not know until Patricia testified at trial that her van did not have a current registration. She had seen Patricia driving the van to visits and assumed it was roadworthy. She did recall that Patricia testified at the December permanency hearing that the van did not have a current inspection sticker.

There is conflicting testimony on this element, and there probably are things the Department could have done differently, but the issue is whether the Department made "*reasonable* efforts" not ideal efforts.

Considering all the evidence in a neutral light, we hold that the evidence is such that the court "could reasonably form a firm belief or conviction" that the Department made reasonable efforts to return M.V.G. Thus, the evidence is factually sufficient on this element, and because the evidence is factually sufficient, it is necessarily legally sufficient. *See D.S.A.*, 113 S.W.3d at 573.

### (3) Regular Visits

The third element is whether Patricia has "regularly visited or maintained significant contact with [M.V.G.]" TEX. FAM. CODE ANN. § 161.001(1)(N)(ii). On this

issue, Patricia refers to letters she mailed to the caseworker while she was incarcerated, and the fourteen visits she had with M.V.G. from October to December. However, Gilley testified that the Department received only two letters from Patricia during the eleven months she was incarcerated. Also, Patricia refused to submit to a drug test in early December, missed a scheduled visit one week later, and did not have a single visit with M.V.G. for more than a month and a half before trial.

There is conflicting testimony on this element as well. But the court could have been persuaded more by Patricia's lack of effort to maintain contact with M.V.G. during the first eleven months of her life and the lack of visits during the two months before trial than by the frequent visits she had between October and December.

Considering all the evidence in a neutral light, we hold that the evidence is such that the court "could reasonably form a firm belief or conviction" that Patricia failed to regularly visit or maintain significant contact with M.V.G. Thus, the evidence is factually sufficient on this element, and because the evidence is factually sufficient, it is necessarily legally sufficient. *See D.S.A.*, 113 S.W.3d at 573.

### (4) Safe Environment

The final element is whether Patricia "demonstrated an inability to provide [M.V.G.] with a safe environment." *Id.* § 161.001(1)(N)(iii). Here, Patricia refers to the Department's failure to explore placement alternatives in Puerto Rico and the failure to re-visit her home after an initial visit in early October. However, Ames testified that she went to Patricia's home three times after the initial visit but no one answered the door even though the van was in the driveway. Johnson testified that she visited later and it

did appear that Patricia had been cleaning the house and had obtained a baby bed for M.V.G., but Johnson also testified that she was aware of "no facts to prove that [Patricia and Joel] are capable of providing the environment that [M.V.G.] requires." In addition, Johnson testified that she made several phone calls to Puerto Rico and was convinced that there was no appropriate or safe environment available for M.V.G. in Puerto Rico.

Considering all the evidence in a neutral light, we hold that the evidence is such that the court "could reasonably form a firm belief or conviction" that Patricia "demonstrated an inability to provide [M.V.G.] with a safe environment." Thus, the evidence is factually sufficient on this element, and because the evidence is factually sufficient, it is necessarily legally sufficient. *See D.S.A.*, 113 S.W.3d at 573.

### *Summary*

There is conflicting evidence in the record, but we conclude that the evidence is legally and factually sufficient to support the court's finding of constructive abandonment under section 161.001(1)(N).

### Best Interest of Child

Patricia also challenges the sufficiency of the evidence to support the best interest finding.

The primary factors to consider when evaluating whether termination is in the best interest of the child are the familiar *Holley* factors, which include:

> (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these

individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976); *T.N.F.*, 205 S.W.3d at 632.

*Desires of the Child:* Because of M.V.G.'s age, there is no evidence relevant to this factor. *See In re S.N.*, 272 S.W.3d 45, 51-52 (Tex. App.—Waco 2008, no pet.).

*Child's Emotional and Physical Needs:* M.V.G. has the usual emotional and physical needs of a toddler. The foster parents are currently meeting her needs in a safe and secure environment. There is limited evidence with regard to whether Patricia can adequately provide for her needs because they have had so little interaction outside of the scheduled visits. However, the record does contain evidence giving rise to a concern about Patricia's ability to provide for M.V.G.'s needs because she: (1) has not provided information regarding her family income and expenses; (2) apparently does not have reliable transportation; (3) has not allowed a follow-up visit inside her home; (4) declined to submit to drug testing; and (5) did not work on her service plan. In addition, some testimony was presented at trial raising a possibility that Patricia had moved out of the house she shared with Joel, but she was not asked about this during her own testimony. Thus, the record contains conflicting evidence on this issue.

*Emotional and Physical Danger to Child:* The primary evidence relevant to this factor is Patricia's refusal to submit to a drug test and her failure to allow a follow-up visit inside her home. This evidence supports a finding that Patricia poses a present or future risk of danger to M.V.G. *Id.* at 52-53.

*Parental Abilities:* Patricia interacted appropriately with M.V.G. during her visits. She did not participate in parenting classes and other services which would have potentially enhanced her parental abilities. Thus, the record contains conflicting evidence on this issue. *Id.* at 53.

*Available Programs:* Patricia did not participate in the programs that were made available to her. There is no evidence that this would change in the future. Thus, the evidence relevant to this factor supports the best-interest finding. *Cf. id.*

*Plans for the Child:* Patricia planned to take M.V.G. to Puerto Rico to be reunited with her siblings. She was consistent with her plans for M.V.G. from her birth. Thus, the evidence relevant to this factor does not support the best-interest finding. *Id.*

*Stability of the Home:* We have already discussed at length the evidence relevant to the stability of Patricia's home. The evidence relevant to this factor supports the best-interest finding. *See id.* at 53.

*Patricia's Acts and Omissions (and Excuses):* Patricia established a good pattern of visitation with M.V.G. after her release from custody. She also indicated that she was working to clean up her home to provide a safe environment for M.V.G. However, she did not perform any of the services ordered by the court and of particular concern refused to submit to a drug test. In addition, she never allowed Ames to have a follow-up visit inside her home to confirm her progress, though Ames attempted to do so at least three times. Although Patricia testified that a lack of reliable transportation was the reason she was unable to perform the services, Ames and Johnson testified that she gave other excuses to them including issues with paperwork, language barriers, and not

wanting to use her cell phone minutes waiting on hold when trying to make appointments with providers. Here again the record contains conflicting evidence regarding these factors.

*Summary:* To the extent there is conflicting evidence in the record regarding the best-interest factors, it was within the court's discretion as finder of fact to resolve those conflicts against Patricia. *See In re A.M.C.*, 2 S.W.3d 707, 717 (Tex. App.—Waco 1999, no pet.). Considering all the evidence in a neutral light, we hold that the evidence is such that the court "could reasonably form a firm belief or conviction" that termination of Patricia's parental rights would be in M.V.G.'s best interest. Thus, the evidence is factually sufficient on this element, and because the evidence is factually sufficient, it is necessarily legally sufficient. *See D.S.A.*, 113 S.W.3d at 573.

We overrule Patricia's sole issue.

## JOEL'S APPEAL

Joel contends in five points that: (1) the court erred by denying his request for a jury trial; (2) the court erred by rendering a default judgment against him; (3) the evidence is insufficient to support the termination order; (4) this appeal is not frivolous; and (5) section 263.405 of the Family Code is unconstitutional.

### Frivolousness Determination

Joel's fourth point challenges the court's finding that his appeal is frivolous but provides no argument or authority.[4] Nevertheless, he has briefed the four other points

---

[4] Instead, Joel has briefed this point together with his fifth point challenging the constitutionality of section 263.405 "[f]or purposes of brevity and convenience." He states in conclusory fashion, "Appellant asserts for all of the reasons set forth in this Brief that his appeal is not frivolous."

noted on their merits. "[S]ection 263.405(g) clearly limits this Court's review at this juncture to the issue of whether [Joel's] appeal is frivolous." *In re S.T.*, 242 S.W.3d 923, 926 (Tex. App.—Waco, order) (per curiam), *disp. on merits*, 263 S.W.3d 394 (Tex. App.—Waco 2008, pet. denied); *see In re K.D.*, 202 S.W.3d 860, 865 (Tex. App.—Fort Worth 2006, no pet.); TEX. FAM. CODE ANN. § 263.405(g) (Vernon 2008). Therefore, we construe Joel's appellate points as challenging the trial court's determination that the issues discussed are frivolous. *See, e.g., In re M.L.J.*, No. 02-07-00178-CV, 2008 WL 1932076, at *3 (Tex. App.—Fort Worth May 1, 2008, pet. denied) (mem. op.).

We review the court's decision under an abuse-of-discretion standard. *S.T.*, 263 S.W.3d at 398; *K.D.*, 202 S.W.3d at 866. "An appeal is frivolous when it lacks an arguable basis in law or in fact." *S.T.*, 263 S.W.3d at 398 (quoting *In re M.N.V.*, 216 S.W.3d 833, 834 (Tex. App.—San Antonio 2006, no pet.); *accord K.D.*, 202 S.W.3d at 866. For the reasons which follow, we conclude that Joel's appeal is not frivolous and the trial court abused its discretion by concluding otherwise. *See In re A.S.*, 241 S.W.3d 661, 666 (Tex. App.—Texarkana 2007, no pet.) (appeal not frivolous where trial court improperly denied jury request).

### Right to Jury Trial

Joel contends in his first point that the court abused its discretion by denying his request for a jury trial.[5]

---

[5] Joel refers in his brief to Patricia's jury demand, but the clerk's record indicates that Joel's attorney filed a written jury demand on his behalf.

Joel filed a jury demand and tendered the requisite fee. *See* TEX. R. CIV. P. 216. When Joel failed to personally appear for trial, the court advised his counsel that Joel had waived his right to a jury under Rule of Civil Procedure 220. *Id.* 220.

Rule 220 provides in pertinent part, "Failure of a party to appear for trial shall be deemed a waiver by him of the right to trial by jury." *Id.* "[F]or purposes of Rule 220, a party, although not personally present, appears for trial when his attorney is present." *In re W.B.W.*, 2 S.W.3d 421, 422 (Tex. App.—San Antonio 1999, no pet.) (quoting *Rainwater v. Haddox*, 544 S.W.2d 729, 732 (Tex. Civ. App.—Amarillo 1976, no writ)). Thus, the court abused its discretion by removing Joel's case from the jury docket. *Id.* Such error requires reversal "when the case contains material fact questions." *Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 667 (Tex. 1996); *accord Hollywood Park Humane Soc'y v. Town of Hollywood Park*, 261 S.W.3d 135, 139 (Tex. App.—San Antonio 2008, no pet.); *A.S.*, 241 S.W.3d at 666.

CPS alleged and the trial court found three predicate grounds for termination, namely, that Joel: (1) knowingly placed or allowed M.V.G. to remain in dangerous conditions or surroundings; (2) engaged in conduct or knowingly placed M.V.G. with persons who engaged in conduct which endangered her; and (3) failed to comply with a court order that established the actions necessary for the return of M.V.G. *See* TEX. FAM. CODE ANN. § 161.001(1)(D), (E), (O).

As noted, Joel's third point challenges the sufficiency of the evidence to support the termination order. He does not, however, clearly specify which of the predicate grounds for termination he is challenging. Instead, he challenges the findings that: (1)

he "engaged in any act to endanger or abandon the child or leave her at places or with persons that would either"; (2) "engaged in any of the acts found by the trial court"; or (3) actively or constructively abandoned the child. Because Joel's third point challenges the court's findings regarding his conduct, we construe it as challenging the second and third predicate grounds for termination (abuse and failure to comply with court order) but not the first (neglect).

A finding under (D) that a parent has knowingly placed or allowed a child to remain in dangerous conditions or surroundings is based on the child's "conditions and surroundings" rather than the parent's conduct. *S.N.*, 272 S.W.3d at 61; *see In re S.K.*, 198 S.W.3d 899, 902 (Tex. App.—Dallas 2006, pet. denied); *In re D.J.J.*, 178 S.W.3d 424, 429 (Tex. App.—Fort Worth 2005, no pet.). Because Joel does not challenge this finding on appeal, he cannot (and does not)[6] contend that a material fact question exists on this predicate ground for termination. Thus, he cannot show that the error in denying his jury request requires reversal. *See Hollywood Park Humane Soc'y*, 261 S.W.3d at 139.

We overrule Joel's first point.

### Default Judgment

Joel contends in his second point that the court abused its discretion by rendering a post-answer default judgment against him.

There is no default when a party fails to appear for trial but counsel appears on the party's behalf. *LeBlanc v. LeBlanc*, 778 S.W.2d 865, 865 (Tex. 1989) (per curiam); *In re*

---

[6] In fact, Joel does not even attempt to explain in his brief how he was harmed by the court's erroneous denial of his request for a jury trial other than to say he was "adversely affected" because the judgment "was rendered herein by the Judge."

*K.C.*, 88 S.W.3d 277, 279 (Tex. App.—San Antonio 2002, pet. denied). Thus the court abused its discretion by rendering a default judgment against Joel.

Joel contends that he was harmed because the court refused to permit his counsel to call witnesses, present evidence, or present argument on Joel's behalf. At the beginning of trial, Joel's counsel asked whether he would be permitted to cross-examine witnesses or call witnesses in view of the court's oral rendition of a default judgment. The trial court advised counsel that he could cross-examine witnesses and, if he desired to call a witness, the court would examine the matter at that point to determine whether he would be permitted to do so. The court also permitted counsel to make an opening statement on Joel's behalf.

Joel's counsel actively participated in virtually the entire trial, making objections which the court ruled on, cross-examining witnesses, and offering exhibits which were admitted in evidence. Counsel never attempted to call a witness on Joel's behalf. At the conclusion of trial, the court overruled Joel's motion for directed verdict. The court confirmed its prior ruling that counsel was not permitted to offer evidence or call witnesses, yet counsel had in fact offered evidence which was admitted and counsel never attempted to call a witness to testify and never identified any witnesses whom counsel wanted to call. Counsel was not permitted to make a final argument on Joel's behalf.

To the extent counsel was not permitted to present witnesses on Joel's behalf, he did not identify a single witness to the trial court (either during the trial or the hearing on his motion for new trial) whom he wished to call nor the substance of such witness's

testimony. Neither has he done so in his appellate brief. Thus, it cannot be said that he was harmed by the trial court's erroneous rendering of a default judgment. *See Hughes v. Grogan-Lamm Lumber Co.*, 331 S.W.2d 799, 803 (Tex. Civ. App.—Dallas 1960, writ ref'd n.r.e.) ("no showing was made on the motion for new trial that McCollough would probably be present at another trial, or what his testimony would be, nor how or in what manner it would probably cause the rendition of a different verdict"); *Clark v. Brown*, 234 S.W.2d 1013, 1014 (Tex. Civ. App.—San Antonio 1950, no writ); *cf. Harrison v. State*, 187 S.W.3d 429, 435 (Tex. Crim. App. 2005) ("If an appellant seeks a new trial based on the denial of a motion for continuance for an absent witness, he must file a sworn motion for new trial, stating the testimony that the missing witness would have provided.").

We overrule Joel's second point.

### Sufficiency of the Evidence

Joel challenges the legal and factual sufficiency of the evidence to support the termination order in his third point. However, he does not challenge the sufficiency of the evidence to support the affirmative finding on the predicate ground for termination under (D) that a parent has knowingly placed or allowed a child to remain in dangerous conditions or surroundings. Nor does he challenge the sufficiency of the evidence to support the best interest finding. *See S.N.*, 272 S.W.3d at 49 ("to mount a successful challenge on appeal based on evidentiary insufficiency, a party must challenge each affirmative finding of a predicate ground for termination or at minimum challenge the best interest finding").

We overrule Joel's third point.

## Constitutionality of Section 263.405

Joel contends in his fifth point that section 263.405 of the Family Code is unconstitutional because it: (1) interferes with the jurisdiction of the appellate court; (2) "attempts to deny the right to counsel to an appealing litigant"; (3) "interferes with the due process and orderly jurisprudence in this Court and its jurisdiction over an appeal"; and (4) "further attempts to limit the jurisdiction of this Court by requiring a statement of points for appeal and limits the manner and type of claims that can be preserved in a motion for new trial."

We construe Joel's complaint to present in essence two constitutional claims: (1) section 263.405 unconstitutionally limits the appellate issues which may be considered; and (2) section 263.405 unconstitutionally permits a trial court to deny the right to counsel to an indigent appellant.

With regard to his first complaint, he has not identified any issue which he has been prevented by the statute from presenting to this Court for review. *See M.C.*, 300 S.W.3d at 314; *In re S.N.*, 292 S.W.3d 807, 811-12 (Tex. App.—Eastland 2009, no pet.); *In re E.A.W.S.*, No. 02-06-00031-CV, 2006 WL 3525367, at *18 (Tex. App.—Fort Worth Dec. 7, 2006, pet. denied) (mem. op.).

With regard to the second complaint, the trial court advised counsel at the new trial hearing that the court would not pay for appointed counsel to represent Joel on appeal after finding that the appeal was frivolous and noting that Joel had failed to appear for trial and had not recently communicated with counsel. Nevertheless, this

Court by order dated April 10, 2009 advised the parties that "an indigent person has a statutory right to appointed counsel to represent him in an appeal challenging a court's determination under section 263.405(d) that his appeal is frivolous." *In re M.V.G.*, 285 S.W.3d 573, 576 n.2 (Tex. App.—Waco 2009, order) (quoting *In re S.T.*, 239 S.W.3d 452, 457 (Tex. App.—Waco 2007, order) (per curiam), *disp. on merits*, 263 S.W.3d 394 (Tex. App.—Waco 2008, pet. denied)).  Joel's counsel has actively represented him on appeal.

Joel's fifth point is overruled.

The termination order with regard to both Patricia and Joel is affirmed.


                         FELIPE REYNA
                         Justice

Before Chief Justice Gray,
      Justice Reyna, and
      Justice Davis
Affirmed
Opinion delivered and filed March 3, 2010
[CV06]