

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-21-00052-CV

IN THE INTEREST OF A.M. AND C.M, CHILDREN

On Appeal from the 320th District Court
Potter County, Texas
Trial Court No. 84957-D, Honorable Pamela C. Sirmon, Presiding

July 8, 2021

MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and DOSS, JJ.

Appellant L.A. (Mother) appeals the district court's final order terminating her parental rights to A.M. and C.M.[1]  Appellee is the Texas Department of Family and Protective Services.  Through a single issue, Mother complains that the evidence is legally and factually insufficient to support the district court's finding that termination of her parental rights was in the best interest of the two children.  Concluding legally and

---

[1] To protect the children's privacy, we will refer to L.A. as "Mother," and the children by initials.  *See* TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2020); TEX. R. APP. P. 9.8(b).  The parental rights of the children's father, J.M., were terminated in the same proceeding but he did not appeal the final order.

factually sufficient evidence supports the district court's best interest finding, we overrule Mother's issue and affirm the final order.

## Background

The Department filed the underlying suit affecting parent-child relationship in August 2018. The case proceeded to final hearing before the bench of the associate judge in October 2019, resulting in a final order terminating Mother's parental rights to the children. On appeal, we concluded the case was not timely brought to final hearing and, consequently, the trial court lacked jurisdiction. We vacated the trial court's final order of termination and dismissed the underlying case.[2]

Following dismissal, the Department filed a second suit; the case proceeded to final hearing before the district judge in March 2021. The Department appeared through one of its supervisors and Mother's caseworker. Mother appeared with court-appointed counsel, but the district court relieved counsel of her duties, at Mother's request, before the presentation of evidence. Mother informed the court she did not want an attorney and was permitted to proceed pro se.

The Department supervisor testified the children were removed from Mother in 2018 "due to [Mother's] drug use" and that "during that time" C.M. also "tested positive." According to the supervisor, although the children remained in a relative's care following dismissal of the first suit for termination they were, "re-removed" in March 2020. This was necessary, the supervisor explained, because Mother had not completed services or

---

[2] *In re A.M. & C.M.,* No. 07-19-00391-CV, 2020 Tex. App. LEXIS 2128 (Tex. App.—Amarillo Mar. 11, 2020, no pet.) (mem. op.); *see* TEX. FAM. CODE ANN. § 263.401(a) (West Supp. 2020) (providing termination of trial court jurisdiction and automatically dismissing suit if trial is not timely commenced).

mitigated the reason for the children's initial removal, her drug use.  The supervisor added that at re-removal Mother's house contained only an air mattress, a television, and a refrigerator.  The home was said to smell of dog feces and urine and was not clean.  The supervisor further testified Mother appeared "scattered," engaging in conversations with the supervisor that "were all over the place."  In the supervisor's testimonial opinion, Mother appeared to be "under the influence."

In a temporary order signed April 9, 2020, the associate judge specified the actions required of Mother for obtaining the return of A.M. and C.M.  The actions ordered were: counseling, a psychological or psychiatric evaluation, successful completion of parenting classes, participation in a drug and alcohol dependency assessment, drug screening, and compliance with each requirement in the Department's original or amended service plan.

Over Mother's objection, the court admitted a document entitled "Family Plan Evaluation."  The Department's attorney identified the document as Mother's "service plan."  According to narrative in the service plan, the children did "not want to do drugs" like Mother and Mother was "glad they know drugs are bad."  Elsewhere in the service plan appeared the statement, "[Mother] does not understand why her children are in the Department's care, because she states that she has not done anything wrong."  The service plan also contained the following "Danger/Worry Statements":

> The Department is worried about [Mother's] substance abuse and the effect it has had and will have on [A.M. and C.M.] if she continues to use drugs. [Mother] tested positive for methamphetamines in December 2018 and appears to be in denial of her drug usage.  If [Mother] continues to use drugs the children will be put in danger of neglect, abuse and/or death.

> The Department is worried that if [Mother] does not deal with her past issues she will continue to make poor decisions.  [Mother] has refused to cooperate

3

with the Department in working services to mitigate the risk to her children. If [Mother] continues to use drugs and make poor decision [sic] her child [sic] would be in danger of severe neglect, abuse and/or death.

The Department is worried that [Mother] has not demonstrated positive parenting skills for [A.M. and C.M.]. The Department is concerned that her children will be put in danger of neglect, abuse and/or death.

Other matters stated in the service plan included: Mother's December 2018 positive drug test result was "at a level >50,000"; Mother denied that C.M. was exposed to drugs; and she did not participate in drug screening after December 2018.

The service plan required Mother obtain stable employment, obtain stable housing, attend parenting classes, complete a drug and alcohol assessment, complete a mental health assessment, complete a psychological assessment, attend individual counseling, maintain a drug-free lifestyle with random screening, complete anger management training, complete rational behavior therapy, and regularly contact the caseworker concerning participation and progress in services.

The caseworker testified she reviewed the service plan with Mother, but Mother refused to sign the document. Mother completed a parenting course, anger control training, rational behavior therapy, and a psychological assessment. But, according to the caseworker's testimony, Mother did not complete the requirements of the service plan.

For example, Mother submitted to drug testing only once, after spending thirty days in jail for refusing a court-ordered drug test. The caseworker testified Mother told her the test was a "lie" because she had not only used methamphetamine (for which the hair-follicle test result was positive), but had also consumed "marijuana, pills, [and] cocaine," which apparently were not detected. Following re-removal, the caseworker asked Mother

4

to resume drug testing, but Mother allegedly refused, calling the testing "a lie." Mother also did not complete a drug treatment course because she is alleged to have "sa[id] that she doesn't use drugs." In the caseworker's opinion, returning the children to Mother would be unsafe because Mother did not mitigate her drug use and lacked "stable and clean and legal housing."

Following the closure of evidence, the attorney *ad litem* for the children recommended termination of the parent-child relationship between Mother and the children. In stating his recommendation, he opined that in placement the children "are healthy, they're happy, they're well adjusted."

On March 17, 2021, the district court signed an order terminating Mother's parental rights to A.M. and C.M. based on predicate ground findings of endangerment, failure to submit to a court order under Family Code Subchapter D, Chapter 261, and failure to comply with a court order establishing the actions necessary for the return of the children, and a finding that termination was in the best interest of A.M. and C.M.[3] On appeal, she challenges the evidence regarding only the finding that termination was in the children's best interest.

**Analysis**

**Sufficiency of the Evidence Supporting the Best Interest Finding**

The Due Process Clause of the United States Constitution and section 161.001 of the Texas Family Code require application of the heightened standard of clear and

---

[3] *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D),(E),(I),(O) and (2) (West Supp. 2020).

convincing evidence in cases involving involuntary termination of parental rights. *In re E.N.C.,* 384 S.W.3d 796, 802 (Tex. 2012); *In re J.F.C.,* 96 S.W.3d 256, 263 (Tex. 2002). "Clear and convincing evidence" is that "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *In re N.G.,* 577 S.W.3d 230, 235 (Tex. 2019) (per curiam) (quoting TEX. FAM. CODE ANN. § 101.007).

Under a legal sufficiency analysis, we examine all of the evidence in the light most favorable to the challenged finding, assuming the "factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *In re J.F.C.,* 96 S.W.3d at 266. We disregard all contrary evidence the factfinder could reasonably have disbelieved or found incredible. *Id.* However, we consider undisputed facts that do not support the finding, so not to "skew the analysis of whether there is clear and convincing evidence." *Id.*

In a factual sufficiency review, a court of appeals must give due consideration to the evidence the factfinder reasonably could have found to be clear and convincing. *In re C.H.,* 89 S.W.3d 17, 25 (Tex. 2002). We determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *Id.* In doing so we consider whether disputed evidence is such that a reasonable factfinder could not have resolved disputed evidence in favor of its finding. *Id.* If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *In re J.F.C.,* 96 S.W.3d at 266.

To assess the district court's best interest determination, we may consider the factors itemized in *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).[4]  While the *Holley* list "is by no means exhaustive, [it] does indicate a number of considerations which either have been or would appear to be pertinent."  *Holley,* 544 S.W.2d at 372.  The absence of evidence about some of these considerations will not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence is undisputed that the parental relationship endangered the safety of the child.  *In re C.H.,* 89 S.W.3d at 27.  In some circumstances, evidence of even one *Holley* factor may be sufficient.  *Jordan v. Dossey,* 325 S.W.3d 700, 729 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (citing *In re C.H.*, 89 S.W.3d at 27).  "Evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest."  *In re C.J.F.,* 134 S.W.3d 343, 354 (Tex. App.—Amarillo 2003, pet. denied).

There is a strong presumption that keeping a child with a parent is in the child's best interest.  *In re R.R.,* 209 S.W.3d 112, 116 (Tex. 2006) (per curiam).  But prompt and permanent placement of a child in a safe environment is also presumed to be in the child's best interest.  TEX. FAM. CODE ANN. § 263.307(a) (West 2019).  The best interest analysis evaluates the best interest of the child, not the parent.  *In re A.C.B.,* 198 S.W.3d 294, 298 (Tex. App.—Amarillo 2006, no pet.).  "A parent's drug use, inability to provide a stable

---

[4] The *Holley* factors are: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent.  *Holley,* 544 S.W.2d at 371-72.

home, and failure to comply with a family service plan support a finding that termination is in the best interest of the child." *In re M.R.,* 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.).

We hold the trial court's best interest finding is supported by legally and factually sufficient evidence. The evidence supports the inference that Mother continued to use methamphetamine and other drugs, even after dismissal of the first termination suit. The supervisor encountered two men with mother who appeared to have "meth sores" on their faces. Following removal of the children, Mother was jailed for thirty-days because she refused court-ordered drug testing. Upon release, her hair follicle sample tested positive for methamphetamine; she admitted using "marijuana, pills, [and] cocaine." Nevertheless, Mother denied using illegal drugs. Mother refused the services and programs available for assistance with drug use and addiction. Mother offered no plans for serving the children's best interest if reunited; indeed, her criticism of the Department and denial of substance abuse in the face of the evidence support an inference that she will continue her drug addiction. Further, Mother's house was largely empty and unclean. Mother did not produce proof of income.

Express evidence of the placement desires of the children, germane to *Holley* factor one, was not presented. While cross-examining the caseworker, Mother stated, "My kids want to come home. My kids - - my kids have said plenty of times that they want to come home. . . . But the caseworker testified the children are happy and thriving in their relative placement. The caseworker also testified she could not recall Mother's last visit with the children. We conclude the evidence relevant to *Holley* factors 2 through 8 sufficiently militates in favor of the district court's best interest finding.

8

Concerning an excuse for Mother's acts or omissions, per *Holley's* ninth factor, Mother claimed the Department falsified her drug-test results and removed her children because she hung up the telephone on the supervisor. Mother reasoned C.M.'s positive drug-test result was a lie because A.M. and C.M. were always together, and C.M.'s test result was "clean." Mother also allegedly claimed she did not complete services because she "won" her first case and expected to again prevail. The district court as factfinder was the sole judge of the weight and credibility of the evidence and was entitled to believe all, some, or none of a witness's testimony.

We conclude factually sufficient evidence supports the district court's best interest finding. As such, the evidence is legally sufficient as well. *See A. J. R. v. Tex. Dep't of Family & Protective Servs.,* Nos. 03-19-00661-CV, 03-19-00662-CV, 2020 Tex. App. LEXIS 2090, at *23 (Tex. App.—Austin Mar. 12, 2020, no pet.) (citing *In re M.V.G.,* 440 S.W.3d 54, 60 (Tex. App.—Waco 2010, no pet.) (mem. op.)). Mother's best interest challenge is overruled.

## Conclusion

Having overruled Mother's issue on appeal, we affirm the final order of the district court.

Lawrence M. Doss
Justice

9