

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-21-00158-CV

## IN THE INTEREST OF C.F. AND B.F., CHILDREN

On Appeal from the 251st Judicial District Court
Randall County, Texas,
Trial Court No. 72461-C, Honorable James Anderson, Presiding

December 28, 2021

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Mother, A.F., appeals a final order terminating her parental rights to C.F. and B.F.[1] At the time of final hearing C.F. was age thirteen and B.F. was age five. Appellee is the Texas Department of Family and Protective Services. The case was tried to the bench on June 24, 2021.[2]

Mother admits she "engaged in conduct that endangers the children," and continues to struggle with alcohol addiction. She complains on appeal that (1) the trial

---

[1] To protect the children's privacy, we will refer to the mother of C.F. and B.F. as "Mother" and the children by initials. *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(a), (b). The parental rights of the children's father, J.C., were terminated in 2017.

[2] The reporter's record indicates the hearing was conducted remotely via YouTube live stream.

court erred in denying her motion to extend the statutory dismissal deadline and (2) the termination of her parental rights was not in the best interest of C.F. and B.F. We overrule Mother's two issues and affirm the final order terminating her parental rights to C.F. and B.F.

Background

For much of her life, Mother has unsuccessfully fought an alcohol addiction. As early as age 13, Mother began consuming alcoholic beverages to intoxication. She has repeatedly been arrested on alcohol-related charges and has received multiple convictions. At time of final hearing, Mother faced a pending conviction for driving while intoxicated following a motor vehicle accident mere months before. The trial record suggests Mother is also facing a pending charge for the offense of possession of a controlled substance, as well as motions to revoke two community supervision orders related to prior DWI convictions. One hair follicle sample tested positive for consumption of marijuana.

For years, Mother has enrolled in various rehabilitation programs. None have been successful in helping Mother overcome her addiction. During at least two attempts to utilize outpatient alcohol rehabilitation treatment in the months before trial, Mother either relapsed and returned to using alcohol or dropped out of the program altogether. At the time of final hearing, Mother indicated she was seeking admission to an inpatient rehab program, but that a bed was not available. She agreed in her testimony that as of the final hearing she was unable to provide a safe environment free of substance use.

Amy Bailey, a Department investigator, testified of events leading to the removal of C.F. and B.F. from Mother's custody. According to Bailey, the Department "received

2

an intake" on Mother and the children on June 9, 2020, after C.F. was reported as having run away from home. When a search party gathered to find the child, Mother showed up intoxicated. C.F. was located days later; she told Bailey she ran away because of Mother's drinking.

On June 23, C.F. told Bailey she did not want to be around Mother until Mother "had some sobriety behind her." Mother repeatedly refused the Department's efforts to have a team meeting, even after learning the Department would seek removal of C.F. and B.F. According to Bailey, Mother responded by communicating the following: (1) her lawyer would contact Bailey, (2) she had scheduled counseling for her and C.F., and (3) she would press charges if Bailey continued harassing her.

The Department removed the children on July 1, 2020, for Mother's allegedly neglectful supervision. Steven Jennings, Ph.D., conducted approximately ten individual counseling sessions with Mother from September 2020 until May 2021. At final hearing, Jennings testified Mother still needed to address the issue of her alcohol abuse; she was not forthcoming about her alcohol problem, at least until February 2021. Jennings opined that parental alcohol abuse consistently produces depression and anxiety in children and creates the potential for neglect as inebriated parents tend to overlook critical matters of care. According to Jennings, children of alcohol abusers have difficulty sustaining relationships and are at high risk of early alcohol abuse; many develop post-traumatic stress disorder. Jennings also agreed that C.F.'s behavior presented added stress for Mother and may have impacted her struggle with sobriety.

Shay Grant, Mother's Department caseworker, discussed Mother's efforts to comply with the family service plan. According to Grant, Mother maintained contact with

the Department, allowed access to her home, addressed parenting skills in counseling, maintained supervised visitation with the children, submitted to drug screening, participated in a substance abuse evaluation, completed a psychosocial evaluation, completed rational behavior therapy, and addressed domestic violence in counseling. However, Mother failed to comply with the service plan by maintaining stable housing, maintaining an alcohol-drug free lifestyle, and maintaining stable employment. In Grant's opinion, Mother did not successfully complete her service plan.

Concerning the stable-housing requirement, Grant testified that Mother moved regularly. When the children were removed, Mother had shared a residence with another. However, this relationship ended (as did Mother's housing) when the other used methamphetamine around the children. Mother then resided with her grandparents. However, this arrangement failed when Mother was in an automobile accident while driving her aunt's vehicle. Mother was subsequently charged with driving while intoxicated. In a third instance, Mother was living with a friend, but again moved when the friend's former boyfriend punched her in the face. During the final hearing, Mother described her housing arrangement as "just kind of bouncing from place to place."

In addition, Grant testified that Mother failed to maintain stable employment. Mother testified she cleaned houses, though her testimony about the number of cleaning jobs she performed varied widely: somewhere between "randomly" and one to three houses per week. Mother added she earned about six or seven hundred dollars monthly doing "side work." Mother testified she planned to seek work waiting tables, and eventually attend school once she obtained "some sobriety."

4

After he was removed from Mother, B.F. was placed with his grandfather, who planned to seek adoption. In Grant's opinion, B.F. was "doing great. He's happy, healthy. There's no concern." Mother testified she has weekly visitation with B.F., and that her relationship with B.F. is a "very, very, very, close one."

Regarding C.F., Mother explained the two talk "every once in a while" but acknowledged that C.F. is "very angry. She's dealing with a lot." C.F. was placed with S.P., a friend of Mother's. In Grant's opinion, C.F. was happy in placement; her basic needs were supplied. Grant added the placement family expressed interest in providing long-term care for C.F., including possible adoption. Mother testified that C.F. ran away "[m]ore than 20 times" while she was in the Department's care. However, the full evidence indicates this occurred before C.F. was placed with S.P.

On July 6, 2021, the trial court signed a final order terminating Mother's parental rights to C.F. and B.F. after making findings under Family Code section 161.001(b)(1), predicate grounds (E) and (O), and that termination was in the children's best interest. TEX. FAM. CODE ANN. § 161.001(b)(1)(E),(O) and (2).

Analysis

<u>Issue One: Mother's Motion for Extension of Time</u>

By her first issue, Mother argues the trial court abused its discretion by denying her motion for extension of the dismissal date. In termination-of-parental-rights cases brought by the Department, a trial court automatically loses subject matter jurisdiction if the trial on the merits is not commenced by the deadline imposed by Family Code section 263.401(a), <u>unless</u> an extension of time is granted under subsections (b) or (b-1) of that

5

section.  TEX. FAM. CODE ANN. § 263.401(a),(b),(b-1).  The trial court may extend the dismissal deadline if the movant shows "extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the department and that continuing the appointment of the department as temporary managing conservator is in the best interest of the child."  TEX. FAM. CODE ANN. § 263.401(b) (emphasis added).  We review a trial court's denial of a requested extension under section 263.401(b) for abuse of discretion.  *In re of A.B.,* No. 07-19-00180-CV, 2019 Tex. App. LEXIS 9110, at *9 (Tex. App.—Amarillo Oct. 15, 2019, no pet.) (mem. op.).

The day before final hearing, Mother moved for an extension of the dismissal date and to postpone the final hearing.  The basis of the motion appears to be that Mother required additional time to complete the service plan.  Her attorney argued bed space at the inpatient alcohol facility chosen by Mother was not available.  However, Mother presented no evidence in support of her motion for an extension.  In argument opposing the requested extension, counsel for the Department pointed to Mother's continued struggle with alcohol addiction, as well as lack of stability in employment and living environment.  The Department argued that C.F. and B.F. "do not deserve to wait while [Mother] does rehab after rehab."  When the trial court verbally rendered an order denying Mother's motion and called the case for final hearing, Mother's attorney announced, "ready to proceed."

We hold the trial court did not reversibly err in denying Mother's motion for an extension of time.  First, we note that when a party announces "ready," she waives any complaint that she requires additional time for trial.  *Cf. In re C.A.Y.,* No. 04-05-00302-CV, 2006 Tex. App. LEXIS 802, at *14 (Tex. App.—San Antonio Feb. 1, 2006, pet. denied)

6

(mem. op.); *Harris v. Tex. Dep't of Protective & Regulatory Servs.,* No. 03-01-00643-CV, 2003 Tex. App. LEXIS 2842, at *2-4 (Tex. App.—Austin Apr. 3, 2003, no pet.) (mem. op.). Second, we find no record evidence supporting Mother's claim that she would have undergone inpatient rehabilitation if beds at the facility were available. Mother's hopes of obtaining treatment to "sober up and move on," while laudable, lack reliable assurances given her history. Third, we point out that notwithstanding Mother's efforts to obtain sobriety, other independent bases for terminating parental rights -- lack of stable housing and employment -- were essentially undisputed at final hearing. Thus, Mother fails to produce evidence of extraordinary circumstances or demonstrate how her requested extension of time would have caused a different result to occur. We conclude the trial court did not abuse its discretion when it denied Mother's motion for extension of time.

Issue Two: Best Interest of the Children

By her second issue, Mother argues termination of her parental rights was not in the children's best interest. Based on the substance of Mother's argument, we interpret her second issue as challenging the legal and factual sufficiency of the evidence supporting the trial court's best-interest finding. The applicable standards of review are discussed in our opinion in *In re Z.N.,* 616 S.W.3d 133, 135-36 (Tex. App.—Amarillo 2020, no pet.).

There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.,* 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). Nevertheless, "A parent's drug use, inability to provide a stable home, and failure to comply with a family service plan support a finding that termination is in the best interest of the child." *In re M.R.,* 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.).

7

To assess the trial court's best-interest determination, we may consider the factors itemized in *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex.1976).[3] While the *Holley* list "is by no means exhaustive, [it] does indicate a number of considerations which either have been or would appear to be pertinent." *Holley,* 544 S.W.2d at 372.[4] "The absence of evidence about some of these considerations would not preclude a fact-finder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *In re C.H.,* 89 S.W.3d 17, 27 (Tex. 2005). In some circumstances, evidence of even one *Holley* factor may be sufficient. *Jordan v. Dossey,* 325 S.W.3d 700, 729 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (citing *In re C.H.,* 89 S.W.3d at 27).

We hold that legally and factually-sufficient evidence supports the trial court's finding that termination of Mother's parental rights is in the best interest of the children. *See A. J. R. v. Tex. Dep't of Family & Protective Servs.,* Nos. 03-19-00661-CV, 03-19-00662-CV, 2020 Tex. App. LEXIS 2090, at *23 (Tex. App.—Austin Mar. 12, 2020, no pet.) (mem. op.) (citing *In re M.V.G.,* 440 S.W.3d 54, 60 (Tex. App.—Waco 2010, no pet.)). The evidence is largely undisputed that Mother continued abusing alcohol through time

---

[3] The *Holley* factors are: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley,* 544 S.W.2d at 371-72.

[4] *See In re R.R.,* 209 S.W.3d at 116 (citing Family Code section 263.307 ["Factors in Determining Best Interest of Child"] and *Holley* as providing factors for consideration "when determining whether termination of parental rights is in the best interest of the child" and also referencing Family Code section 153.131(b) which provides "a strong presumption that the best interest of a child is served by keeping the child with a parent.").

of trial, that she lacked stable housing, and that she lacked stable employment. The trial court had the ability to assess Mother's articulated future hope of "sober[ing] up and mov[ing] on," particularly in light of her history. Mother faced multiple pending criminal penalties for her decisions to excessively use alcohol and to drive a vehicle while intoxicated. The trial court, as factfinder, was authorized to assess the children's conduct alongside Dr. Jennings' opinion testimony concerning the effects of parental alcoholism on children. Although the record does not contain the express desires of the children, it does reference C.F's concerns that Mother should obtain sobriety before having further contact, as well as C.F.'s change after being removed from Mother. B.F. is thriving after being placed with his grandfather.

Mother's second issue is overruled.

Conclusion

Having overruled Mother's two issues, we affirm the final order of the trial court.


Lawrence M. Doss
Justice

9