# NO. 12-14-00238-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST OF S. R.,* | § | *APPEAL FROM THE 258TH* |
| | § | *JUDICIAL DISTRICT COURT* |
| *A CHILD* | § | *TRINITY COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

A.M. appeals the termination of his parental rights to S.R. He raises four issues on appeal. We affirm.

### BACKGROUND

A.M. is the father of S.R., born September 11, 2010.[1] J.R. is the mother of S.R., but is not a party to this appeal. On May 11, 2011, the Department of Family and Protective Services (the Department) filed an original petition for the protection of S.R., for conservatorship, and for termination of J.R.'s and A.M.'s parental rights. That same day, the trial court signed an order for protection of a child in an emergency and appointed the Department as the temporary sole managing conservator of S.R.

The trial court conducted a bench trial on the Department's petition on October 15, 2012. Thereafter, the court denied the Department's petition for termination, but found that it was not in S.R.'s best interest to appoint J.R. and A.M. as managing conservators. As a result, the court appointed the Department as S.R.'s permanent managing conservator and J.R. and A.M. as possessory conservators.

---

[1] To protect the identity of the child the subject of this suit, we use aliases to identify various individuals involved. *See* TEX. R. APP. P. 9.8(b)(2).

On March 28, 2013, the Department filed a petition requesting the court to modify its final order and to terminate J.R.'s and A.M.'s parental rights. The petition alleged that the circumstances of the child, managing conservator, possessory conservator, or other party affected by the order had materially and substantially changed and that the parents committed one or more of the acts or omissions necessary to support termination of their parental rights under Section 161.001 of the family code. On December 5, 2013, S.R.'s foster parents filed a motion to intervene and a petition seeking to terminate J.R.'s and A.M.'s parental rights and be granted sole joint managing conservatorship of S.R.

The trial on the Department's and the intervenors' petitions began on July 10, 2014. That same day, A.M. filed his first amended original answer asserting res judicata and waiver as affirmative defenses. The Department objected to his pleadings as untimely. The trial court permitted the filing of A.M.'s pleadings and allowed the Department to amend its pleadings to add Section 161.004 as an additional ground for termination in response to A.M.'s amended answer. The Department's written trial amendment was filed the next day.[2]

Ultimately, the jury determined that the parent-child relationship between A.M. and S.R. should be terminated and that termination was in S.R.'s best interest. This appeal followed.

## TERMINATION OF PARENTAL RIGHTS

The natural right between a parent and child is one of constitutional dimensions; thus, termination proceedings must be strictly scrutinized. *In re K.M.L.*, 443 S.W.3d 101, 112 (Tex. 2014). Section 161.001 of the Texas Family Code permits the termination of parental rights if two elements are met. TEX. FAM. CODE ANN. § 161.001 (West 2014); *In re C.L.C.*, 119 S.W.3d 382, 390 (Tex. App.—Tyler 2003, no pet.). First, the parent must have engaged in any one of the acts or omissions itemized in the first subsection of the statute. TEX. FAM. CODE ANN. § 161.001(1); *In re C.L.C.*, 119 S.W.3d at 390. Second, termination must be in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(2); *In re C.L.C.*, 119 S.W.3d at 390. Both elements must be proved by "clear and convincing evidence," and proof of one element does not alleviate the petitioner's burden of proving the other. TEX. FAM. CODE ANN. § 161.001; *In re C.L.C.*, 119 S.W.3d at 390. "Clear and convincing evidence" means the measure or degree of

---

[2] The Department's trial amendment also included an additional ground for terminating the parental rights of J.R.

proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. TEX. FAM. CODE ANN. § 101.007 (West 2014).

## STANDARD OF REVIEW

When the burden of proof is clear and convincing evidence, we conduct a legal sufficiency review by looking at all of the evidence in the light most favorable to the finding to determine whether a reasonable fact finder could have formed a firm belief or conviction that its finding was true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We must assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so. *Id.* Thus, it follows that the reviewing court should disregard all evidence that a reasonable fact finder could have disbelieved or found to have been incredible, but this does not mean that the reviewing court must disregard all evidence that does not support the finding. *Id.* Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence. *Id.* If, after conducting our legal sufficiency review, we determine that no reasonable fact finder could form a firm belief or conviction that the matter which must be proven is true, then we will conclude that the evidence is legally insufficient. *Id.*

When we conduct a factual sufficiency review, we must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing. *Id.* Our inquiry is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *Id.* We consider whether the disputed evidence is such that a reasonable fact finder could not have resolved that disputed evidence in favor of its finding. *Id.* If, when viewed in light of the entire record, the disputed evidence is so significant that a fact finder could not have reasonably formed a firm belief or conviction, then the evidence is factually insufficient. *Id.* In finding evidence factually insufficient, the appellate court should detail why it has concluded that a reasonable fact finder could not have credited disputed evidence in favor of its finding. *Id.* at 267.

The standard of review for legal and factual sufficiency challenges maintains a deferential standard for the fact finder's role, which means the trier of fact is the exclusive judge of the credibility of the witnesses and weight to be given their testimony. *In re C.H.*, 89 S.W.3d 17, 26-27 (Tex. 2002); *Nordstrom v. Nordstrom*, 965 S.W.2d 575, 580 (Tex. App.—Houston [1st Dist.] 1997, pet. denied). Thus, our review must not be so rigorous that the only fact

findings which could withstand review are those established beyond a reasonable doubt. ***In re C.H.***, 89 S.W.3d at 26.

**CONSTRUCTIVE ABANDONMENT**

In his second issue, A.M. argues that the evidence is legally and factually insufficient to terminate his parental rights pursuant to Section 161.001(1)(N) of the family code. He argues that the Department never intended to return S.R. to his care and failed to make reasonable efforts to return S.R.

**Termination under Section 161.001(1)(N)**

A trial court may terminate the parent-child relationship if clear and convincing evidence shows that the parent

> (1)(N) constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services . . . for not less than six months, and:
>
>> (i)  the department . . . has made reasonable efforts to return the child to the parent;
>>
>> (ii)  the parent has not regularly visited or maintained significant contact with the child; and
>>
>> (iii)  the parent has demonstrated an inability to provide the child with a safe environment;
>
> [and]
>
> (2) that termination is in the best interest of the child.

TEX. FAM. CODE ANN. § 161.001(1)(N), (2) (West 2014). A.M. does not challenge the sufficiency of the evidence under subsections (N)(ii) and (N)(iii). Accordingly, we limit our review to the sufficiency of the evidence to support a finding under Section 161.001(1)(N)(i) regarding "reasonable efforts."

The preparation and administration of a service plan constitutes evidence that the Department made reasonable efforts to return the child to the parent. ***In re M.R.J.M.***, 280 S.W.3d 494, 505 (Tex. App.—Fort Worth 2009, no pet.). Moreover, the Department's goal of termination or unrelated adoption in a service plan does not automatically render the evidence insufficient to support a finding of reasonable efforts at reunification. *See, e.g.*, ***In re K.G.***, 350 S.W.3d 338, 354 (Tex. App.—Fort Worth 2011, pet. denied); ***In re J.J.S.***, 272 S.W.3d 74, 83-84 (Tex. App.—Waco 2008, pet. struck). In reviewing the sufficiency of the evidence supporting

4

termination under Section 161.001(1)(N), the issue is whether the Department made reasonable efforts, not ideal efforts.  *See **In re M.V.G.***, 440 S.W.3d 54, 61 (Tex. App.—Waco 2010, no pet.).

## The Evidence

The record indicates that prior to the Department's filing its May 2011 petition, it had begun an investigation concerning S.R. in February of that year, when S.R. was approximately five months old.[3]

A.M. was incarcerated when S.R. was born, and he first saw her when she was six months old.  He saw S.R. again was when she was nine months old—"when I got out of the county."  A.M. testified that when the Department first took S.R. in May 2011, he had "no rights" and no service plan because he was an alleged father.  Later, a DNA test confirmed that S.R. was his biological child.  Nevertheless, A.M. testified that he has seen S.R. only once since May 2011, and that was for four hours.  A.M. confirmed that he knew he had to be drug free before he could have visits with S.R.  But the evidence showed that he failed every drug screen he took.  A.M. also admitted that, on the day of trial, he would not pass a drug screen because he had smoked marijuana.

Samantha Skinner, the foster care supervisor for the Department in Trinity County, testified that she was the caseworker in S.R.'s case in 2012.  She testified that the Department prepared and filed a service plan for A.M. in June 2012, and that he signed the service plan in August 2012.[4]  Skinner's and A.M.'s testimony confirmed that a new service plan was not created after the trial court denied termination in October 2012.  But A.M. testified that, after the

---

[3] Because the Department amended its pleadings to include grounds for termination under Section 161.004 of the family code, evidence presented from the first termination trial was admissible.  *See* TEX. FAM. CODE ANN. § 161.004(b) (West 2014) ("At a hearing under this section, the court may consider evidence presented at a previous hearing in a suit for termination of the parent-child relationship with respect to the same child."); ***In re K.G.***, 350 S.W.3d 338, 352-53 (Tex. App.—Fort Worth 2011, pet denied) (holding that the only way to terminate parental rights based on evidence presented at hearing in which termination was previously denied is to plead Section 161.004).  Accordingly, we review the evidence supporting termination of A.M.'s parental rights prior to and after the trial court's denial of termination in October 2012.

[4] The original dismissal date for this case was set for May 14, 2012.  Pursuant to Section 263.401(b) of the family code, the trial court set the new dismissal date for November 10, 2012.  *See* TEX. FAM. CODE ANN. § 263.401(b) (West 2014).

October 2012 trial, he was still required to complete the tasks assigned in the service plan in order to see S.R.[5]

The June 2012 service plan was admitted at trial. Among the tasks A.M. was required to complete were (1) cooperating with the Department by participating in all scheduled appointments, meetings, permanency planning meetings, court hearings, and visits with S.R.; (2) obtaining and maintaining stable employment; (3) submitting to random drug screens; (4) remaining clean and sober and refraining from criminal activity, including illegal drug use; (5) participating in counseling to understand CPS's involvement and demonstrate behavioral changes; and (6) completing a drug and alcohol assessment and following any and all recommendations. The service plan did not include a statement about the Department's permanency goals.

Skinner testified that A.M. was deficient in several areas of his service plan because he (1) was unsuccessfully discharged from his therapy, (2) participated in only two of the eight requested drug screens, (3) did not participate in any visitations or permanency conferences, and (4) did not maintain stable housing or employment. A.M. testified that, since October 2012, he never received any letters about permanency conferences, and that he felt the Department had not made reasonable efforts to work with him.

It is undisputed that A.M. lived at several different locations after S.R. was placed in the Department's care. Skinner testified that it was Department policy to make contact with the parents of a child in Department care at least once each month by phone, in person, or by mail. However, the Department experienced difficulty in maintaining contact with A.M. because he changed his residence several times without notifying the Department.

Skinner testified that, beginning in November 2012, she would call the most recent phone number they had on file for A.M.[6] She testified that someone other than A.M. usually answered her phone call and she would then have to inquire as to A.M.'s whereabouts. Skinner stated that she spoke with "Tammy," A.M.'s sister, several times and that Tammy would give her A.M.'s contact information. In addition to the telephone calls, the evidence showed that the Department attempted to send A.M. several letters, notifying him of permanency hearings, meetings, and

[5] Skinner testified that a service plan "is designed to alleviate the causes for removal and the concerns with the parents' ability to care for the child and hopefully reunite the family."

[6] Skinner was assigned as the caseworker for this case in November 2012.

changes in S.R.'s placement, but most were not received due to A.M.'s frequent changes of address.

The record indicates that A.M. lived in Houston during part of the time that S.R. was in Department care. The first time A.M. reported a Houston address, the Department assigned a courtesy worker in Houston to help facilitate A.M.'s progress on his service plan. Skinner testified that A.M.'s courtesy worker continued to offer services to A.M. after the October 2012 trial, which included therapy sessions. However, A.M.'s attendance at the therapy sessions was inconsistent. Skinner testified that, as a result, she received a notice of A.M.'s "unsuccessful discharge" from therapy in February 2013. She further testified that the courtesy worker discontinued A.M.'s services in March 2013 because A.M. had no contact with her for three months, and Harris County policy requires parents to pay for their own services when they reach a certain amount of "no shows" or fail to participate in the Department's services.

A.M. testified that he did not believe the Department had made reasonable efforts to work with his family during the case. The evidence showed that sometime after S.R.'s initial removal, but before the October 2012 trial, A.M. named his brother "Jason" and sister Tammy as possible placements for S.R. According to A.M., Jason never participated in the case, but Tammy has had visits with S.R. A.M. testified that he wanted Tammy to have S.R. because "I wasn't ready for [S.R.] to be just with me, but I know that I could help my sister take care of her." But the record indicates that A.M.'s statement that he would "help" Tammy care for S.R. was speculative—A.M. never provided financial support for S.R. while she was in foster care and never requested visitation (even for S.R.'s birthday and Christmas). A.M.'s desires were best made known by his response to his attorney's question, "Have you ever not been interested in getting [S.R.?]" A.M. responded, "No, I've always been interested in getting her and—well, not me getting her but placing her with a relative."

Skinner testified that when a parent provides names for a relative placement, the Department obtains as much information as it can from the parent about the relative, contacts the relative, and begins gathering information to determine if placement with the named relative is a feasible option. She confirmed that A.M. listed Jason as a possibility, but explained that the Department could "never get any contact information from anyone regarding him." When Tammy was initially named as a potential placement, she was living in a one bedroom apartment

with two children and had pending criminal charges.[7] Skinner explained that the Department will not conduct home studies when a criminal history search shows pending charges. She testified that Tammy would not have passed a home study because Tammy's home was small and she had pending criminal charges. As a result, Skinner advised Tammy to contact her once those issues were resolved.

In August or September of 2013, Tammy contacted the Department regarding a home study. By this time, Tammy's criminal issues had been resolved and a home study was conducted. The results of the home study found that Tammy had stable employment and was committed to providing S.R. with a safe home environment. However, the Department did not approve the home study. Skinner testified that the Department's disapproval of the home study was partly due to the fact that Tammy had given false information.

**Discussion**

A.M. argues that because the Department failed to file a new service plan after the October 2012 trial, there is no evidence that the Department attempted to return S.R. to A.M. and there is no evidence as to why S.R. should not be returned to him. We disagree.

S.R. argues that after the trial court denied termination in October 2012, S.R.'s service plan was no longer in effect because the trial court's order denying termination stated that "all relief requested in this case and not expressly granted is denied." But the question of whether the Department engaged in reasonable efforts to reunite S.R. with A.M. does not turn on whether the old service plan was still in effect or whether a new service plan was filed. Instead, the question of reasonable efforts focuses on the Department's conduct.

Moreover, the absence of a stated goal on A.M.'s service plan is not a *per se* failure to engage in reasonable efforts at reunification. We note that the Department's goal after the 2012 trial was unrelated adoption and has never changed. But even when the goal is termination, at least one court has held that the preparation and implementation of a service plan constitutes reasonable efforts at reunification. *See, e.g.*, ***In re K.G.***, 350 S.W.3d at 354. Accordingly, the Department's goal in this case—regardless of whether it was written in the service plan—does not mean that it failed to engage in reasonable efforts at reunification.

The record indicates that A.M. had little desire to have a relationship with S.R., and no desire for custody. Here, the Department offered services before and after October 2012 that

---

[7] Tammy later testified that at that time, she was actually living in a two bedroom apartment.

8

were designed to facilitate S.R.'s reunification with A.M. This evidence, when viewed in light of the fact that the Department attempted to provide A.M. notice of meetings and hearings concerning S.R. and conducted a home study at Tammy's request, shows that the Department's efforts at reunification went beyond the preparation and filing of a service plan and occurred after the trial court's denial of termination in October 2012.

**Conclusion**

After viewing the evidence in the light most favorable to the finding, we conclude that a reasonable trier of fact could have formed a firm belief or conviction that the Department made reasonable efforts to return S.R. to A.M. *See* TEX. FAM. CODE ANN. § 161.001(1)(N)(i); *In re J.F.C.*, 96 S.W.3d at 266. After viewing the entire record, we hold that a fact finder could reasonably have formed a firm belief or conviction that the Department's allegation that it made reasonable efforts to return S.R. to A.M. was true. *See id.* Accordingly, we overrule A.M.'s second issue.[8]

## BEST INTEREST OF THE CHILD

In his fourth issue, A.M. argues that the evidence is legally and factually insufficient to support a finding that termination of his parental rights is in S.R.'s best interest. A.M. contends that the Department failed to present any evidence to overcome the presumption that reunification was in S.R.'s best interest.

**Applicable Law**

The party seeking termination must prove by clear and convincing evidence that termination of a parent's rights is in the child's best interest. *See* TEX. FAM. CODE ANN.§ 161.001(2). Parental rights may not be terminated merely because a child might be better off living elsewhere. *In re C.R.*, 263 S.W.3d 368, 375 (Tex. App.—Dallas 2008, no pet.).

In determining the best interest of the child, the courts consider a number of factors including (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these

---

[8] Because we have held that the evidence is legally and factually sufficient to terminate A.M.'s parental rights pursuant to Section 161.001(1)(N), we need not address A.M.'s third issue relating to the sufficiency of the evidence for termination under subsection (O). *See* TEX. R. APP. P. 47.1; *In re C.T.*, No. 12-11-00384-CV, 2012 WL 4502427, at *7 (Tex. App.—Tyler 2012, pet. denied) (mem. op.).

individuals; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

The family code also provides a list of factors that we will consider in conjunction with the above-mentioned *Holley* factors. *See* TEX. FAM. CODE ANN. § 263.307(b) (West 2014). Here, the applicable statutory factors include (1) the child's age and physical and mental vulnerabilities; (2) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (3) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (4) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; and (5) whether the child's family demonstrates adequate parenting skills. *See id.* § 263.307(b)(1), (8), (10), (11), (12).

The evidence need not prove all statutory or *Holley* factors in order to show that termination of parental rights is in a child's best interest. *See Holley*, 544 S.W.2d at 372; *In re J.I.T.P.*, 99 S.W.3d 841, 848 (Tex. App.—Houston [14th Dist.] 2003, no pet.). Undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the child's best interest. *In re M.R.J.M.*, 280 S.W.3d at 507. But the presence of scant evidence relevant to each factor will not support such a finding. *Id.* Evidence supporting termination of parental rights is also probative in determining whether termination is in the best interest of the child. *See In re C.H.*, 89 S.W.3d at 28-29.

**Discussion**

The evidence discussed in our previous section shows that A.M. (1) has a history of substance abuse; (2) is not willing or able to complete counseling services or cooperate with and facilitate an agency's close supervision; (3) is not willing or able to effect positive environmental and personal changes within a reasonable amount of time; and (4) has not demonstrated adequate parenting skills. *See* TEX. FAM. CODE ANN. § 263.307(b)(8), (10), (11), (12); *Holley*, 544 S.W.2d at 372. These factors weigh in favor of termination.

The record also shows that (1) at the time of trial, S.R. was three years old and had only one functioning kidney; (2) the Department's plan for S.R. was unrelated adoption; (3) S.R. had

been living with her foster parents for almost two years and was bonded with them and their children; (4) the foster parents (intervenors) wanted to adopt S.R.; and (5) S.R. had been receiving medical checkups to monitor her kidney status and a heart murmur discovered in a prior medical appointment.[9]  *See* TEX. FAM. CODE ANN. § 263.307(b)(1); ***Holley***, 544 S.W.2d at 372.  These factors weigh in favor of termination.

We note that A.M. testified it was not in S.R.'s best interest that his parental rights be terminated and that he "love[d]" his "little baby girl."  He also presented evidence from family members who testified that they believed it was in S.R.'s best interest for A.M. "to be in her life."  But none of these witnesses, including A.M., provided testimony showing that he was willing and able to provide S.R. with a safe environment, other than placing S.R. with Tammy.  Although the home study showed that Tammy could provide S.R. with a safe home environment, this evidence does not outweigh the other best interest factors.

## Conclusion

After viewing the evidence in the light most favorable to the finding, we conclude that a reasonable trier of fact could have formed a firm belief or conviction that termination of A.M.'s parental rights was in S.R.'s best interest.  *See* TEX. FAM. CODE ANN. § 161.001(2); ***In re J.F.C.***, 96 S.W.3d at 266.  After viewing the entire record, we hold that a fact finder could reasonably have formed a firm belief or conviction that the allegation that the termination of A.M.'s parental rights is in S.R.'s best interest is true.  *See* TEX. FAM. CODE ANN. § 161.001(2); ***In re J.F.C.***, 96 S.W.3d at 266.  Accordingly, we overrule A.M.'s fourth issue.

## SEPARATE TRIALS

In his first issue, A.M. argues that the trial court erred by granting an oral motion for separate trials and removing the issue of conservatorship and residency from the jury's consideration.[10]  A.M. contends that the trial court erred because the motions for separate trials were untimely and prejudiced his case.

---

[9] Although S.R. was in good health at the time of trial, the evidence showed that she would continue to need yearly checkups to monitor her kidney.  Additional visits concerning A.M.'s heart murmur were not necessary unless subsequent doctor's appointments detected complications.

[10] At trial, the parties used the terms "bifurcation" and "separate trials" interchangeably.  "Separate trials" are sometimes referred to as bifurcation.  *See **In re Allstate Cnty. Mut. Ins. Co.***, 209 S.W.3d 742, 745 (Tex. App.—Tyler 2006, no pet.).  In this opinion, we use the term "separate trials" in discussing A.M.'s first issue.

11

**Standard of Review and Applicable Law**

Rule 174 of the Texas Rules of Civil Procedure provides that a court "in furtherance of convenience or to avoid prejudice may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues." TEX. R. CIV. P. 174(b); *In re B.L.D.*, 113 S.W.3d 340, 346 (Tex. 2003) (trial court may order separate trials to avoid prejudice). The trial court's decision to grant separate trials should not be disturbed on appeal absent an abuse of discretion. *See Tarrant Reg. Water Dist. v. Gragg*, 151 S.W.3d 546, 556 (Tex. 2004); *Van Dyke v. Boswell*, 697 S.W.2d 381, 384 (Tex. 1985).

**Discussion**

During trial, the intervenors sought to introduce evidence regarding the benefits that were potentially available to S.R. if theY were named S.R.'s sole managing conservators. A.M. objected to the introduction of this evidence, arguing that it was "prejudicial" and "improper" in a termination trial. In a hearing outside the presence of the jury, the intervenors argued that if the issue of conservatorship was submitted to the jury, the jury would need to know the potential benefits that S.R. could receive if the intervenors were named the managing conservators because their petition sought sole managing conservatorship.

The intervenors and A.M. agreed that testimony relating to the potential benefits that S.R. could receive was prejudicial to A.M.'s termination case. Nevertheless, A.M. objected to the case being divided into separate trials, contending that he did not want to "sever the issue." The trial court ruled that it would "bifurcate the issues," and ordered that the parties not say anything about benefits until after the jury decided whether A.M.'s parental rights should be terminated.

After the jury returned its verdict on the issue of whether A.M.'s parental rights should be terminated (answering "yes"), the Department, the intervenors, and the attorney ad litem for S.R. agreed to the appointment of the Department as S.R.'s sole managing conservator and the intervenors as S.R.'s possessory conservators. A.M. objected to the intervenors' having possessory conservatorship, and stated, "[T]heir position is we have no standing. I think the Court needs to rule." At this point in the proceeding, the jury had not been discharged, but A.M.'s objection did not include a specific reference to the conservatorship issue being removed

12

from the jury's determination. By failing to raise this objection at trial, A.M. forfeited his right to raise this issue on appeal. *See* TEX. R. APP. P. 33.1.

Moreover, the trial court's granting of separate trials regarding termination and conservatorship was to avoid prejudice against A.M. relating to the termination issue. We conclude that the trial court did not abuse its discretion. *See* TEX. R. CIV. P. 174(b); *Gragg*, 151 S.W.3d at 556. Accordingly, we overrule A.M.'s first issue.

## DISPOSITION

Having overruled A.M.'s first, second, and fourth issues and having concluded that we need not address A.M.'s third issue, we *affirm* the judgment of the trial court.

BRIAN HOYLE
Justice

Opinion delivered January 23, 2015.
*Panel consisted of Worthen, C.J. and Hoyle, J.*

(PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JANUARY 23, 2015**

**NO. 12-14-00238-CV**

**IN THE INTEREST OF S. R., A CHILD**

Appeal from the 258th District Court
of Trinity County, Texas (Tr.Ct.No. 20870)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J. and Hoyle, J.*