

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-14-00333-CV

IN THE INTEREST OF N.R. AND
A.O., CHILDREN

----------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 323-98331J-13

----------

## MEMORANDUM OPINION[1]

----------

Appellant, I.H., appeals the termination of her parental rights to N.R. and A.O. In one point, Appellant contends the evidence is legally and factually insufficient to support the finding that termination was in the best interest of the children. We hold the evidence is both legally and factually sufficient, overrule Appellant's sole point, and affirm the trial court's judgment.

---

[1]*See* Tex. R. App. P. 47.4.

**Termination Generally**

In a termination case, the State seeks not just to limit parental rights but to erase them permanently—to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except the child's right to inherit.  Tex. Fam. Code Ann. § 161.206(b) (West 2014); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985).  Consequently, "[w]hen the State seeks to sever permanently the relationship between a parent and a child, it must first observe fundamentally fair procedures."  *In re E.R.*, 385 S.W.3d 552, 554 (Tex. 2012) (citing *Santosky v. Kramer*, 455 U.S. 745, 747–48, 102 S. Ct. 1388, 1391–92 (1982)).  We strictly scrutinize termination proceedings and strictly construe involuntary termination statutes in favor of the parent.  *In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012); *E.R.*, 385 S.W.3d at 554–55; *Holick*, 685 S.W.2d at 20–21.

Termination decisions must be supported by clear and convincing evidence.  Tex. Fam. Code Ann. §§ 161.001, .206(a) (West 2014); *E.N.C.*, 384 S.W.3d at 802.  "[C]onjecture is not enough."  *E.N.C.*, 384 S.W.3d at 810.  Due process demands this heightened standard because "[a] parental rights termination proceeding encumbers a value 'far more precious than any property right.'"  *E.R.*, 385 S.W.3d at 555 (quoting *Santosky*, 455 U.S. at 758–59, 102 S. Ct. at 1397); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002); *see also E.N.C.*, 384 S.W.3d at 802.  Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations

sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2014); *E.N.C.*, 384 S.W.3d at 802.

For a trial court to terminate a parent-child relationship, the party seeking termination must establish by clear and convincing evidence that the parent's actions satisfy one ground listed in section 161.001(1) and that termination is in the best interest of the child under family code section 161.001(2) of the Texas Family Code. Tex. Fam. Code Ann. § 161.001; *E.N.C.*, 384 S.W.3d at 803; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Both elements must be established. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re C.D.E.*, 391 S.W.3d 287, 295 (Tex. App.—Fort Worth 2012, no pet.).

## Background

The Texas Department of Family and Protective Services filed a petition to terminate Appellant's parental rights to N.R. on April 24, 2013. The supporting affidavit provided, among other concerns, that both Appellant and N.R. tested positive for cocaine when N.R. was born. The Department amended its petition on April 30, 2013, to include A.O., N.R.'s older brother, when it determined Appellant had him in her care as well.

After a bench trial on August 18 and 21, 2014, the trial court signed on October 2, 2014, a judgment terminating Appellant's parental rights to both children. The trial court found that Appellant had knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered their physical or emotional well-being and, further, engaged in conduct or

3

knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being. Tex. Fam. Code Ann. § 161.001(1)(D), (E). The trial court found that termination of the parent-child relationship between Appellant and her children was in the children's best interest. *Id.* § 161.001(2).

**Evidence**

Appellant is an undocumented alien. This prevented her from getting certain government benefits. Besides N.R. and A.O., Appellant had six other children, none of which were in her care. Appellant was thirty years old at the time of trial.

Appellant started using cocaine when she was twenty-one or twenty-two years old and continued to use cocaine for eight to nine years. Appellant admitted using cocaine while pregnant with three of her other children. Both Appellant and N.R. were positive for cocaine when N.R. was born. Appellant admitted that while at bars, she was around cocaine users. She also admitted drinking quite a bit while pregnant with N.R.

Appellant initially told the Department that A.O. was in Mexico. About five days after N.R.'s removal, the Department located A.O. in Fort Worth and removed him as well. At trial, Appellant admitted she had been raising A.O. before the removal.

In May 2013, Appellant was eager to start her service plan. By July or August 2013, she had completed a six-week drug rehabilitation program. She

4

also completed parenting classes. However, on September 6, 2013, Appellant tested positive for THC and opiates. She admitted using cocaine on September 27, 2013.

After another drug assessment, Appellant was referred to an outpatient drug treatment program. She was supposed to attend her outpatient drug treatment program every day Monday through Friday, but she attended only nine sessions in October, three in November, two in December, and one in January. On February 4, 2014, Appellant admitted using cocaine on November 19, 2013. Appellant tested positive for cocaine on February 14, 2014. Ultimately, she did not successfully complete her outpatient drug treatment program. Despite Appellant's difficulties, on February 25, 2014, the trial court signed an order extending the dismissal date to August 22, 2014.

In March 2014, Appellant spent two weeks in jail in connection with her failure to pay child support for one of her other children. In March and April 2014, Appellant refused to submit to drug tests. Appellant's service plan stated that if she failed to submit to drug tests, the Department would assume the results would have been positive.

In May 2014, Appellant informed the Department that she had been fired from her job at a restaurant after working only one day. Appellant had lost eight different jobs during the course of the case. She also disclosed she was three months behind on her rent. Appellant lived in a back bedroom that was in poor condition. There were holes in the wall. The room was dirty. There were no

extra beds.  She also said that because she thought the Department was going to terminate her parental rights anyway, she saw no point in continuing any drug treatment.

Over the course of the case, Appellant visited her children twenty-six of the forty scheduled visits.  When attending visits, Appellant usually arrived late or left early.  Her last visit was on July 7, 2014.

On July 10, 2014, Appellant refused to submit to a hair follicle drug test. On July 15, 2014, Appellant's community supervision was revoked for failure to pay child support, and Appellant was sentenced to 180 days in the county jail beginning December 16, 2014.  On August 12, 2014, Appellant again refused to submit to a drug test.  Trial began on August 18, 2014.

## Issue

In one issue, Appellant contends the evidence was legally and factually insufficient to support the trial court's finding that termination of her parental rights was in the children's best interest.  Tex. Fam. Code Ann. § 161.001(2). Appellant does not attack the trial court's findings of grounds under subsections (D) and (E).  *Id.* § 161.001(1)(D), (E).  The same evidence that was used to establish grounds under subsection (1) of section 161.001 may also help to establish best interest under subsection (2).  *See In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013); *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002).

If the evidence is factually sufficient, then it is necessarily legally sufficient as well.  *See In re M.V.G.*, 440 S.W.3d 54, 60 (Tex. App.—Waco 2010, no pet.);

*In re J.E.H.*, No. 02-07-00137-CV, 2008 WL 467332, at *4 (Tex. App.—Fort Worth Feb. 21, 2008, no pet.) (mem. op. per curiam); *In re D.S.A.*, 113 S.W.3d 567, 569 (Tex. App.—Amarillo 2003, no pet.). Therefore, although Appellant's point encompasses challenges to both the legal and factual sufficiency of the evidence, we will address Appellant's factual sufficiency challenge first. If factually sufficient evidence supports the trial court's finding of best interest, then the evidence is necessarily legally sufficient to support it.

### Factual Insufficiency

We are required to perform "an exacting review of the entire record" in determining whether the evidence is factually sufficient to support the termination of a parent-child relationship. *In re A.B.*, 437 S.W.3d 498, 500 (Tex. 2014). In reviewing the evidence for factual sufficiency, we give due deference to the factfinder's findings and do not supplant its judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that the termination of the parent-child relationship would be in the best interest of the children. Tex. Fam. Code Ann. § 161.001; *C.H.*, 89 S.W.3d at 28. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient. *H.R.M.*, 209 S.W.3d at 108. There is a

7

strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006).

We review the entire record to determine the child's best interest. *E.C.R.*, 402 S.W.3d at 250. Nonexclusive factors that the trier of fact in a termination case may also use in determining the best interest of the child include:

(A)     the desires of the child;

(B)     the emotional and physical needs of the child now and in the future;

(C)     the emotional and physical danger to the child now and in the future;

(D)     the parental abilities of the individuals seeking custody;

(E)     the programs available to assist these individuals to promote the best interest of the child;

(F)     the plans for the child by these individuals or by the agency seeking custody;

(G)     the stability of the home or proposed placement;

(H)     the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(I)     any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (citations omitted); *see E.C.R.*, 402 S.W.3d at 249 (stating that in reviewing a best interest finding, "we consider, among other evidence, the *Holley* factors"); *E.N.C.*, 384 S.W.3d at 807.

These factors are not exhaustive; some listed factors may be inapplicable to some cases. *C.H.*, 89 S.W.3d at 27. Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that

8

termination is in the best interest of the child.  *Id.*  On the other hand, the presence of scant evidence relevant to each factor will not support such a finding.  *Id.*  That is, "[a] lack of evidence does not constitute clear and convincing evidence."  *E.N.C.*, 384 S.W.3d at 808.

*The Desires of the Children*

At the time of trial, N.R. was roughly sixteen months old.  A.O. had just turned five.  The children were too young to express their desires.

*The Emotional and Physical Needs of the Children Now and in the Future*

Appellant missed fourteen out of forty visits and, when attending, would usually arrive late or leave early.  The caseworker thought Appellant loved her children.  However, the caseworker also thought Appellant was not well-bonded to A.O.  N.R. had never lived with Appellant.  Regarding the visits, the caseworker said, at least with regard to the June visits, that there was a lack of empathy on the part of Appellant, that Appellant was not emotionally there for the children, and that Appellant appeared angry more than anything else.

*The Emotional and Physical Danger to the Children Now and in the Future*

The evidence showed Appellant had a cocaine problem dating back eight or nine years, and as of the time of trial, it persisted.  Appellant maintained at trial that she relapsed just one time, denied she was still using cocaine, and denied being addicted to cocaine.  However, the trial court could infer that Appellant's failure to take drug tests indicated she was using drugs.  *In re J.T.G.*, 121 S.W.3d 117, 131 (Tex. App.—Fort Worth 2003, no pet.).  Drug use is relevant to best

9

interest.  *See In re D.A.T.*, No. 02-10-00335-CV, 2012 WL 1947338, at *12 (Tex. App.—Fort Worth May 31, 2012, pet. denied).  As the caseworker stated, "[P]erson[s] [who are] using [are] unable to make healthy decisions for their children and themselves."

*The Parental Abilities of the Individuals Seeking Custody*

Appellant did not have any of her eight children in her custody.  She did, however, complete her parenting classes.  The caseworker stated Appellant displayed some appropriate parenting skills, but with time, she noticed a lack of connection between Appellant and her children.  The caseworker described it as a lack of empathy.  The caseworker also said Appellant showed a lack of caregiver capabilities in that Appellant expressed violent behaviors and was not able to cope with stress.

*The Programs Available to Assist These Individuals to Promote the Best Interest of the Children*

Although the Department provided Appellant resources to address her addiction, and although Appellant availed herself of those resources to some extent, the evidence ultimately showed Appellant abandoned those resources. Anyone adopting the children would be entitled to Medicaid health coverage for the children, state college tuition reimbursement, a monthly adoption assistance payment, and therapeutic support and counseling.

*The Plans for the Children by the Individuals or the Agency Seeking Custody*

The Department's plan was to place the two children for adoption. The Department had completed homes studies on two families who were licensed to adopt as well as foster children.

For her part, Appellant eventually wanted her children back. Appellant said she planned to rent a two-bedroom house for about $450 a month. Appellant also said she cleaned houses and could earn $80 to $100 per house. She estimated she made about $500 per month but thought she could earn more. The trial court, however, could have concluded Appellant had over a year to stabilize her life financially but failed. At the time of trial, Appellant was not in a two-bedroom house, Appellant had shown an inability to stay current on her rent, and Appellant was facing incarceration for not paying her child support.

Appellant's alternate plan was to have N.R. and A.O. live with her mother. Appellant's mother intervened. The Department, however, conducted a home study on Appellant's mother and did not recommend placement. Appellant's mother had a CPS history herself for neglectful supervision. In the fourteen months preceding trial, Appellant's mother had visited the children only twice. The caseworker acknowledged the home study of Appellant's mother had many positive things to say about her, but the caseworker added that the negatives, specifically the safety concerns, outweighed the positives.

*The Stability of the Home or Proposed Placement*

The evidence showed Appellant was unable to keep a job. The evidence showed she lived in a bedroom that was not suitable for a mother and two small children. There was also evidence Appellant was recently behind on her rent. Appellant was not in a position to provide the children a safe and stable home. Stability and permanence are paramount when raising children. *In re J.D.*, 436 S.W.3d 105, 120 (Tex. App.—Houston [14th Dist.] 2014, no pet.). As the caseworker succinctly put it, "[Appellant] didn't show any type of stability, any type of structure, really anything that could make . . . a CPS worker assured she [could] provide for her children."

The evidence also showed Appellant spent two weeks in jail in March 2014 for failure to pay child support on another child and was set to begin a 180-day sentence in jail beginning in December 2014 for the same reason. Arrests and incarcerations are some evidence that termination would be in the children's best interest. *In re D.M.*, 58 S.W.3d 801, 817 (Tex. App.—Fort Worth 2001, no pet.).

*The Acts or Omissions of the Parent which May Indicate that the Existing Parent-Child Relationship is Not a Proper One*

*Any Excuse for the Acts or Omissions of the Parent*

The evidence showed Appellant was not able to properly take care of herself. She used cocaine while pregnant or, at the very least, exposed both herself and her unborn child to drugs while pregnant. She was unable to keep a job. She was recently behind on her rent. The caseworker said Appellant denied

the removal was her fault. The caseworker said further that Appellant blamed her cocaine use on the Department. Appellant denied being an addict. The evidence, however, showed Appellant's use of cocaine spanned eight or nine years. Both Appellant and N.R. tested positive when N.R. was born. Appellant continued to use cocaine during the case.

Based on the entire record, we hold a factfinder could reasonably form a firm conviction or belief that the termination of the parent-child relationship would be in the best interest of the children. *C.H.*, 89 S.W.3d at 28. We hold the evidence was factually sufficient and, therefore, necessarily legally sufficient. *M.V.G.*, 440 S.W.3d at 60.

## Conclusion

Having overruled Appellant's sole issue, we affirm the trial court's judgment.

PER CURIAM

PANEL: GARDNER, J.; LIVINGSTON, C.J.; and DAUPHINOT, J.

DELIVERED: March 12, 2015

13