**Affirmed and Memorandum Opinion filed September 15, 2015.**



In The

# Fourteenth Court of Appeals

### NO. 14-15-00265-CV

## IN THE INTEREST OF A.A.L.A, F.K.A, AND C.M.A., CHILDREN

**On Appeal from the 308th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2011-25411**

## M E M O R A N D U M   O P I N I O N

Appellant, J.A., appeals the trial court's final decree terminating his parental rights with respect to Anna, Freddie, and Christopher (collectively "the children").[1] The children's mother ("Mother"), whose parental rights were also terminated, does not appeal. Appellant raises five issues concerning the legal and factual sufficiency of the evidence to support certain findings by the trial court and the trial court's not appointing counsel for him immediately upon his request. We affirm.

---

[1] We use fictitious names to refer to the children. *See* Tex. R. App. P. 9.8(b)(2).

## I. BACKGROUND

On June 20, 2013, the Department of Family and Protective Services ("the Department") received a report alleging neglectful supervision of the children. The children had been brought to a police station by a friend of Mother. Appellant and Mother were both incarcerated at the time—appellant in the Institutional Division of the Texas Department of Criminal Justice and Mother in a county jail. Appellant had been in prison since 2009.

According to the friend, Mother and the children had been living with him for a few months after they were evicted from their apartment. The friend said Mother had stolen his truck, money, and phone and left the children with him. When she had not returned after more than a week, the friend reported his truck stolen, and Mother was arrested.

The two older children, Anna (age 8) and Freddie (almost age 7), denied any abuse by Mother but said she had left them with the friend, and they had no food while she was gone. However, at trial, the Department's caseworker testified that Freddie reported being hit. Christopher (age 4) did not make any disclosures of abuse or neglect. All three children appeared healthy but were dirty.

The Department interviewed Mother in jail. According to the interviewer, Mother was honest about her drug use and said the children would be better off without her. The Department took possession of the children on June 23, 2013. The trial court appointed the Department temporary sole managing conservator of the children the next day.

Trial began as scheduled on December 17, 2014. The Department announced ready and called its caseworker, LeeShawn Lewis, to the stand. At the request of appellant's lawyer, the trial was then recessed until January so that

appellant, who reportedly had been paroled on December 15, 2014, could attend. Trial resumed on January 28, 2015. Appellant was present and represented by counsel. Although Mother had been served, she did not answer or appear at trial. Lewis, appellant, and appellant's wife testified. At the end of trial, the associate judge presiding stated on the record that she found (1) both parents committed acts establishing the predicate termination grounds set out in subsections D, E, and M of section 161.001(1) of the Texas Family Code, and (2) termination is in each of the children's best interest. On March 2, 2015, the district judge signed a decree terminating both Mother's and appellant's parental rights with respect to the children and appointing the Department sole managing conservator of the children. The children were to remain in their placement with a relative, with whom they had been living since the Department was appointed temporary managing conservator in June 2013. Appellant timely appealed.

## II.   ISSUES ON APPEAL

In his first issue, appellant contends the trial court abused its discretion in delaying appointment of counsel for him. In his second issue, appellant challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination is in the best interest of the children. Although appellant does not contest the trial court's finding under subsection M and acknowledges termination may be predicated on that subsection alone, he urges us in his third, fourth, and fifth issues to review the sufficiency of the evidence supporting the trial court's findings on subsections D and E under the collateral consequences doctrine.

## III.   BURDEN OF PROOF AND STANDARDS OF REVIEW

Involuntary termination of parental rights is a serious matter implicating fundamental constitutional rights. *See In re G.M.*, 596 S.W.2d 846, 846 (Tex. 1980); *In re S.R.*, 452 S.W.3d 351, 357 (Tex. App.—Houston [14th Dist.] 2014,

3

pet. denied). Although parental rights are of constitutional magnitude, they are not absolute. The child's emotional and physical interests must not be sacrificed merely to preserve the parent's rights. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002).

Due to the severity and permanency of the termination of parental rights, the burden of proof is heightened to the clear and convincing evidence standard. *See* Tex. Fam. Code Ann. § 161.001 (West 2014); *In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007; *accord In re J.F.C.*, 96 S.W.3d at 264. This heightened burden of proof results in a heightened standard of review. *In re S.R.*, 452 S.W.3d at 358.

Parental rights can be terminated upon proof by clear and convincing evidence that (1) the parent has committed an act described in section 161.001(1) of the Family Code; and (2) termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001. Only one predicate finding under section 161.001(1) is necessary to support a decree of termination when there is also a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

In reviewing the legal sufficiency of the evidence in a termination case, we must consider all the evidence in the light most favorable to the finding to determine whether a reasonable fact finder could have formed a firm belief or conviction that its finding was true. *See In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009); *In re J.F.C.*, 96 S.W.3d at 266; *In re C.H.*, 89 S.W.3d at 25. We assume the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so, and we disregard all evidence a reasonable fact finder could have disbelieved. *In re J.O.A.*, 283 S.W.3d at 344; *In re J.F.C.*, 96 S.W.3d at 266.

4

In reviewing termination findings for factual sufficiency of the evidence, we consider and weigh all the evidence including disputed or conflicting evidence. *See In re J.O.A.*, 283 S.W.3d at 345. "If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re J.F.C.*, 96 S.W.3d at 266. We give due deference to the fact finder's findings, and we cannot substitute our own judgment for that of the fact finder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam). The fact finder is the sole arbiter when assessing the credibility and demeanor of witnesses. *Id.* at 109. We are not to "second-guess the trial court's resolution of a factual dispute by relying on evidence that is either disputed, or that the court could easily have rejected as not credible." *In re L.M.I.*, 119 S.W.3d 707, 712 (Tex. 2003).

## IV. PREDICATE TERMINATION GROUNDS

The trial court predicated termination of appellant's parental rights on subsections D, E, and M of section 161.001(1) of the Texas Family Code.

### A. Previous Termination (Subsection M)

Termination under section 161.001(1)(M) requires a finding that the parent "had his or her parent-child relationship terminated with respect to another child based on a finding that the parent's conduct was in violation of Paragraph (D) or (E) or substantially equivalent provisions of the law of another state." Tex. Fam. Code Ann. § 161.001(1)(M).

On March 9, 2004, appellant's and Mother's parental rights were terminated with respect to an older child based on section 161.001(1)(E) of the Texas Family Code. A copy of the 2004 termination decree was admitted into evidence and is

5

included in the appellate record. Appellant did not contest the subsection M finding in the trial court and does not on appeal. Accordingly, the first requirement for termination—a predicate statutory ground—is satisfied. *See* Tex. Fam. Code Ann. § 161.001(1).

## B. Endangerment (Subsections D and E)

### 1. Collateral Consequences Doctrine

Having determined the evidence is sufficient to support the trial court's finding on section 161.001(1)(M), we need not consider whether the evidence supports the findings on section 161.001(1)(D) or section 161.001(1)(E). *See In re A.V.*, 113 S.W.3d at 362 (only one predicate finding under section 161.001(1) is necessary to support termination when there is also a finding that termination is in the child's best interest). Subsections D and E both address child endangerment. *Id.* § 161.001(1)(D) ("knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child"); *id.* § 161.001(1)(E) ("engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child").

Appellant recognizes this 2015 decree may be affirmed on the section 161.001(1)(M) finding alone, provided the trial court's finding that termination is in the children's best interest is supported by legally and factually sufficient evidence. However, he urges us to consider the legal and factual sufficiency of the evidence to support the endangerment findings under subsections D and E due to the negative collateral consequences those findings may carry in the future— specifically, that those endangerment findings may support termination of appellant's parental rights under section 161.001(1)(M) in a future termination proceeding. Appellant argues that he is entitled, as a matter of due process, to

6

judicial review of the endangerment findings.[2] He contends this appeal is the only opportunity he has for such review, because the termination decree may not be attacked directly or collaterally more than six months after it has become final. Tex. Fam. Code Ann. § 161.211; *see L.C. v. Tex. Dep't of Family & Protective Servs.*, 03–14–00793–CV, 2015 WL 267807, *6–7 & n.47 (Tex. App.—Austin June 8, 2015, pet. filed) (mem. op.) (per curiam) (concluding that appellant's complaints about a 2007 termination amounted to an impermissible collateral attack on that termination decree).

This court was presented with the collateral consequences argument in a parental termination case earlier this year. *See In re J.J.G.*, No. 14–15–00094–CV, 2015 WL 3524371 (Tex. App.—Houston [14th Dist.] June 4, 2015, no pet.) (mem. op.) Termination in *J.J.G.* was predicated on section 161.001(1)(O) (failure to comply with the court-ordered family service plan) and section 161.001(1)(E) (endangerment). The appellant conceded the evidence was sufficient to support the trial court's finding on subsection O. However, she argued the court should review the sufficiency of the evidence to support the trial court's finding on subsection E, because that finding could be used as a basis for a future termination of her parental rights under section 161.001(1)(M). *See id.* at *4.

This case is distinguishable from *J.J.G.* because this is the second time appellant's parental rights have been terminated on endangerment grounds. His parental rights were terminated under subsection E as to an older child in 2004. By contrast, the appellant in *J.J.G.* had not previously had her parental rights terminated with respect to another child. If the endangerment finding was not

---

[2] Appellant finds support for his argument in a 2008 opinion from the Waco Court of Appeals. *See In re S.N.*, 272 S.W.3d 45, 59-61 (Tex. App.—Waco 2008, no pet.). However, in 2013, the Waco court declined to follow that portion of *S.N.*, characterizing it as dicta and overruling it "to the extent necessary." *In re S.L.*, 421 S.W.3d 34, 37 n.3 (Tex. App.—Waco 2013, no pet.).

removed from the decree in *J.J.G.*, then no decree of termination based on endangerment would exist. In this case, even if the endangerment findings were removed from this 2015 decree, the 2004 decree may be used in a future termination proceeding, just as it was used in this proceeding, as a previous termination under subsection M.

Appellant points out that the 2004 termination is more than eleven years old and says that if he is faced with a termination proceeding in the future, he may wish to argue the 2004 decree is too remote in time to be fairly used as a previous termination under subsection M. The age alone of a termination does not determine the propriety of its use in a later proceeding. *See Avery v. State*, 963 S.W.2d 550, 552–53 (Tex. App.—Houston [1st Dist.] 1997, no writ). *Avery* instead considered whether the conditions that existed at the time of the previous termination persisted to the time of the second termination proceeding. *See id.* (seventeen-year-old termination was fairly considered given that appellant had engaged in a pattern of criminal activity for the past eighteen years).

In this case, the record shows appellant engaged in criminal conduct steadily from 1997 through 2009. He was imprisoned for the 2009 crime when this termination proceeding began in 2013. His pattern of criminal activity would support a finding of endangerment in this case without regard to his 2004 termination. However, assuming appellant does not engage in further criminal conduct following this 2015 termination, at some point his 1997–2009 criminal activity may be found to be too distant in time to support a future termination. If that occurs, then *Avery* suggests a court might disregard the 2004 termination. If the 2004 termination is disregarded, then this 2015 termination premised on findings on endangerment would be sufficient to support a future termination under section 161.001(1). For that reason, and remembering that involuntary termination

8

of parental rights is a serious matter implicating fundamental constitutional rights, *In re G.M.*, 596 S.W.2d at 846, we conclude that in this case, where the two existing terminations are more than a decade apart, the negative collateral consequences of this 2015 termination on a potential future termination proceeding warrants our review of the sufficiency of the evidence to support the trial court's endangerment findings under subsections D and E. However, that conclusion is limited to the facts of this case. We do not decide if the collateral consequences doctrine applies in every case in which parental rights are terminated based on endangerment grounds and another subsection of section 161.001(1). We also do not address the broader question of whether the collateral consequences doctrine has a place in parental termination cases at all, given that the existence of a future termination proceeding will depend on the parent's conduct, which is within the parent's control, and the concept of collateral consequences generally refers to matters beyond a person's control.

### 2. Sufficiency of the evidence

We now review the sufficiency of the evidence to support the trial court's findings under subsections D and E. Tex. Fam. Code Ann. § 161.001(1)(D), (E).

Both subsections D and E use the term "endanger." "To endanger" means to expose a child to loss or injury or to jeopardize a child's emotional or physical health. *See In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996); *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 616–17 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

Endangerment under section 161.001(1)(D) may be established by evidence about the child's environment. *In re A.S.*, 261 S.W.3d 76, 83 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). "Environment" refers to the acceptability of living conditions, as well as a parent's conduct in the home. *In re W.S.*, 899 S.W.2d 772,

776 (Tex. App.—Fort Worth 1995, no writ). A child is endangered when the environment creates a potential for danger that the parent is aware of but consciously disregards. *See In re M.R.J.M.*, 280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.); *In re S.M.L.*, 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Subsection D is not a basis for terminating parental rights if the parent was unaware of the endangering environment. *In re Z.C.J.L.*, 14–13–00115–CV, 2013 WL 3477569, at *12 (Tex. App.—Houston [14th Dist.] July 9, 2013, no pet.) (mem. op.); *see also In re T.H.*, 131 S.W.3d 598, 603 (Tex. App.—Texarkana 2004, pet. denied) ("[E]ven if clear and convincing evidence supported the trial court's finding that the environment posed a danger to T.H.'s well-being, the Department failed to show that [the father] knowingly placed or allowed T.H. to remain in such an environment."). However, a parent need not know for certain that the child is in an endangering environment; awareness of such a potential is sufficient. *Id.*; *see also In re C.L.C.*, 119 S.W.3d 382, 392 (Tex. App.—Tyler 2003, no pet.) ("It is sufficient that the parent was aware of the potential for danger to the child in such environment and disregarded that risk.").

Under section 161.001(1)(E), the evidence must show the endangerment was the result of the parent's conduct, including acts, omissions, or failures to act. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). Termination under subsection E must be based on more than a single act or omission; the statute requires a voluntary, deliberate, and conscious course of conduct by the parent. *Id.* A court properly may consider actions and inactions occurring both before and after a child's birth to establish a "course of conduct." *In re S.M.*, 389 S.W.3d 483, 491–92 (Tex. App.—El Paso 2012, no pet.). While endangerment often involves physical endangerment, the statute does not require that conduct be directed at a child or that the child actually suffers injury; rather, the specific danger to the

child's well-being may be inferred from parents' misconduct alone. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re R.W.*, 129 S.W.3d 732, 738–39 (Tex. App.—Fort Worth 2004, pet. denied). A parent's conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. *In re A.B.*, 412 S.W.3d 588, 599 (Tex. App.—Fort Worth 2013), *aff'd*, 437 S.W.3d 498 (Tex. 2014).

In evaluating endangerment under subsection D, we consider the child's environment before the Department obtained custody of the child. *See In re J.R.*, 171 S.W.3d 558, 569 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Under subsection E, however, courts may consider conduct both before and after the Department removed the child from the home. *See Avery*, 963 S.W.2d at 553 (considering persistence of endangering conduct up to time of trial); *In re A.R.M.*, No. 14–13–01039–CV, 2014 WL 1390285, at *7 (Tex. App.—Houston [14th Dist.] Apr. 8, 2014, no pet.) (mem. op.) (considering pattern of criminal behavior and imprisonment through trial).

Because the inquiry under both subsections D and E includes the conduct of the parent, evidence of criminal conduct, convictions, or imprisonment is relevant to a review of whether a parent engaged in a course of conduct that endangered the well-being of the child. *A.S. v. Tex. Dep't of Family & Protective Servs.*, 394 S.W.3d 703, 712–13 (Tex. App.—El Paso 2012, no pet.).

Appellant has a lengthy criminal history, beginning before and continuing after the children were born. When the Department began its investigation, Appellant had been convicted of at least five felonies, three of which were drug related, and three misdemeanors since 1997. Anna, the oldest child in this case, was born in 2005. Appellant had at least an eight-year criminal history at that point. He also committed crimes after Anna was born, and he continued to do so

after Freddie was born in 2006. Appellant committed the last crime reflected in the record—the one for which he was imprisoned when the investigation began—in February 2009, while Mother was pregnant with Christopher.

It is undisputed that appellant knew Mother used drugs when the children lived with her. He testified that he and Mother broke up around October 2008. The children lived with Mother after she and appellant broke up. For the period between the break-up and appellant's imprisonment in 2009, appellant knew the children were living with Mother and knew Mother was using drugs, including "pills" and perhaps cocaine.

Because appellant had a long and continuing history of criminal behavior, which endangered the children, and he knew Mother was endangering the children by using drugs while they were living with her, we conclude the evidence is legally and factually sufficient to support the trial court's findings under subsections D and E of section 161.001(1) of the Texas Family Code. We overrule appellant's fourth and fifth issues.

## V. BEST INTEREST OF THE CHILD

Termination must also be in the child's best interest. Tex. Fam. Code Ann. § 161.001(2). We review the entire record in deciding a challenge to the court's best-interest finding. *See In re E.C.R.*, 402 S.W.3d 239, 250 (Tex. 2013).

There is a strong presumption that the best interest of a child is served by keeping the child with the child's natural parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). Prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest. *See* Tex. Fam. Code Ann. § 263.307(a).

Courts may consider the following non-exclusive factors in reviewing the sufficiency of the evidence to support the best-interest finding: the desires of the child; the physical and emotional needs of the child now and in the future; the emotional and physical danger to the child now and in the future; the parental abilities of the persons seeking custody; the programs available to assist those persons seeking custody in promoting the best interest of the child; the plans for the child by the individuals or agency seeking custody; the stability of the home or proposed placement; acts or omissions of the parent which may indicate the existing parent-child relationship is not appropriate; and any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). As noted, this list of factors is not exhaustive, and evidence is not required on all the factors to support a finding that termination is in the child's best interest. *In re D.R.A.*, 374 S.W.3d 528, 533 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

In addition, the Texas Family Code sets out thirteen factors to be considered in evaluating a parent's willingness and ability to provide the child with a safe environment. *See* Tex. Fam. Code Ann. § 263.307(b). Factors applicable to this case include: the child's age and physical and mental vulnerabilities; whether there is a history of substance abuse by the child's family or others who have access to the child's home; the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; and whether the child's family demonstrates adequate parenting skills, including providing the child with minimally adequate health and nutritional care, a safe physical home environment, and an understanding of the child's needs

13

and capabilities. *See id.* § 263.307(b)(1), (8), (10), (11), (12); *In re R.R.*, 209 S.W.3d at 116.

**The children.** At the time of trial, Anna was almost ten, Freddie was nine, and Christopher was five. The record does not reflect any special physical or emotional needs of the children. None of the children testified at trial. No evidence was presented about the desires of any of the children.

**Appellant.** The Department created a family service plan for appellant. He was not required to complete it until after he was released from prison. Lewis testified appellant had been in contact with her and expressed his desire to satisfy the service plan's requirements now that he was out of prison. He had started working to complete the plan after his parole in December, including getting a job. He said he was willing to go to Alcoholics Anonymous meetings. Lewis acknowledged he was working to change his life.

Appellant said he was prepared to complete the services required by the Department. He testified that he used to "pick up [his] kids and take them wherever they needed to go, buy them clothes, whatever." He also testified: "Really, I love my kids. I want to do whatever I can to get them back. I know I'm working right now. I got a bad background. Everybody messes up. I want to do whatever it takes to get my kids back. I love them that much, you know what I'm saying?"

However, appellant also testified that he did not participate at all in the 2003–04 termination proceeding regarding his older child. He said Mother sent him the paperwork and told him, "It's going to be all right, just throw the papers out," which is what he did. He did not read any of the papers he was sent concerning that termination proceeding. A reasonable fact finder could have taken appellant's lack of participation in his earlier termination proceeding into account in assessing appellant's willingness and ability to parent his children.

As discussed above, appellant knew Mother used drugs when the children lived with her. For a period of at least several months, appellant knew the children were living with Mother and knew Mother was using drugs.

**Danger to the children.** Also as discussed above, appellant's extensive criminal history endangered the children. The trial court could have reasonably inferred that appellant's repeated criminal acts would continue in the future.

**Stability of the home.** Lewis testified that appellant's living condition was too unstable for the Department to recommend placing the children with him. He had been released on parole to his sister's house, but Lewis said that house was not suitable for the children. First, appellant's sister had a criminal history. Second, the children had been living with his sister at one point, but she had returned them to their maternal grandmother. Finally, the two-bedroom house was not big enough to accommodate the children, appellant, his sister, and his sister's paramour.

By contrast, the children had been placed with a maternal relative in June 2013, and they lived with that relative through trial. Lewis testified the children were doing well in that home. The Department's goal was for the children to live with that relative permanently. The relative reportedly wanted to adopt the children.

While there is some evidence appellant had the desire and ability to parent the children, there is also evidence that appellant had an extensive criminal history and could not provide the children a stable home. We hold the evidence is legally and factually sufficient to support the trial court's finding that termination is in the children's best interest. We overrule appellant's second issue.

## VI.   APPOINTMENT OF COUNSEL

In his first issue, appellant complains the trial court abused its discretion by not appointing a lawyer for him until ten months after he requested one. Appellant mailed the district clerk his original answer and a motion, both dated July 17, 2013, and filed on July 23, 2013. He requested the trial court appoint an attorney for him in his answer. His motion asked the trial court to issue a bench warrant to have him brought from prison to the court so that he could participate in the case, or, alternatively, to grant a continuance. The trial court appointed counsel for appellant on May 1, 2014. Appellant contends the months he spent without an attorney "robbed him of 10 months of possible work towards services and dialogue with the Department about what services were recommended."

Appointment of an attorney for indigent parents in termination cases is mandated by statute:

> (a) In a suit by a governmental entity under Subtitle E in which termination of the parent-child relationship or the appointment of a conservator for a child is requested, the court **shall** appoint an attorney ad litem to represent the interests of: (1) an indigent parent of the child who responds in opposition to the termination or appointment . . . .

Tex. Fam. Code Ann. § 107.013(a)(1) (boldface added).

The word "shall" in a statute imposes a duty, "unless the context in which the word or phrase appears necessarily requires a different construction or unless a different construction is expressly provided by statute." Tex. Gov't Code Ann. § 311.016(1) (West 2013). Neither the language nor the context of section 107.013 suggests its use of "shall" requires a different construction. Therefore, a trial court has a duty to appoint counsel for an indigent parent. As a result, a trial court's complete failure to appoint counsel to represent an indigent parent is reversible

16

error. *See, e.g.*, *In re C.D.S.*, 172 S.W.3d 179, 185–86 (Tex. App.—Fort Worth 2005, no pet.); *Odoms v. Batts*, 791 S.W.2d 677, 681 (Tex. App.—San Antonio 1990, no writ).

Unlike section 107.012, which requires immediate appointment of an attorney ad litem for a child, the version of section 107.013 in effect during the trial court proceedings contained no specific timetable for appointing an attorney ad litem to represent the parent.[3] *See In re S.R.*, 452 S.W.3d at 371; *In re M.J.M.L.*, 31 S.W.3d 347, 354 (Tex. App.—San Antonio 2000, pet. denied).

In *S.R.*, the appellant signed a "Request for Appointment of Counsel" and completed a questionnaire about his financial resources on the day of the adversary hearing, though the record did not reflect if he made the request before or after the hearing. *In re S.R.*, 452 S.W.3d at 371. The appellant argued the trial court reversibly erred by failing to appoint an attorney for him until after the adversary hearing. *See id.* However, the appellant did not request an attorney until the day of the hearing. We "[a]ssum[ed] that [the father's] documents were sufficient to trigger the process for mandatory appointment of an attorney ad litem" and concluded the trial court did not err in not appointing counsel before the adversary hearing. *See id.* at 372. We also noted that because trial did not begin for almost a year and a half after the appellant's lawyer was appointed, any error was harmless.

---

[3] Section 107.013 was amended effective September 1, 2015. One of the changes was the addition of subsection (a-1), which provides:

> (a-1) In a suit described by Subsection (a), if a parent is not represented by an attorney at the parent's first appearance in court, the court shall inform the parent of:
>
> (1) the right to be represented by an attorney; and
>
> (2) if the parent is indigent and appears in opposition to the suit, the right to an attorney ad litem appointed by the court.

Tex. Fam. Code Ann. § 107.013 (West Supp. 2015). The amended version of section 107.013 thus imposes a time by which the trial court must inform the parent of his right to counsel, although the statute still does not impose a deadline for the trial court to appoint counsel.

*See id.* at 373 ("[T]he record does not reflect that any error in the timing of counsel's appointment probably led to the rendition of an improper judgment.").

In this case, appellant requested a lawyer, but the trial court did not appoint one for almost ten months. Given our assumption in *S.R.* that the request for a lawyer triggers the trial court's duty to appoint one, we likewise assume in this case that the trial court erred in not appointing counsel for nearly ten months. However, we conclude that the trial court's error is not reversible, because it probably did not lead to the rendition of an improper judgment or prevent appellant from presenting his case on appeal. *See* Tex. R. App. P. 44.1(a) (stating standard for harmless error in civil cases); *see In re M.V.G.*, 440 S.W.3d 54, 65–66 (Tex. App.—Waco 2010, no pet.) (applying harmless error standard where counsel for father in parental termination case "actively participated in virtually the entire trial").

Appellant's lawyer had nearly nine months to prepare for trial. He was appointed on May 1, 2014. Trial was scheduled to begin about four months later. Based on motions for continuance filed by appellant's lawyer, trial was ultimately reset for December 17, 2014. On December 11, appellant's lawyer filed another motion for continuance on the basis that appellant was eligible for parole on December 15, and wanted time to complete the services required by the family service plan. Trial began as scheduled on December 17, but the trial court effectively granted appellant the requested continuance by recessing the trial until January 28, 2015.

The record shows appellant's lawyer filed an answer, special exceptions, and three motions for continuance during the nine months he represented appellant before trial. He attended a permanency hearing and hearings on the motions for

18

continuance. Appellant does not contend his lawyer was unprepared for trial or otherwise rendered ineffective assistance.

Appellate courts have found no reversible error when the trial court appointed counsel only a few months before trial, but there was no suggestion that the delay in appointment rendered counsel's representation inadequate. *See, e.g.*, *In re C.Y.S.*, No. 04–11–00308–CV, 2011 WL 5971068, *5 (Tex. App.—San Antonio Nov. 30, 2011, no pet.) (mem. op.) (four months; appellant did not suggest her lawyer was unprepared or rendered ineffective assistance of counsel); *In re J.J.*, No. 13–04–00202–CV, 2006 WL 949952, *3 (Tex. App.—Corpus Christi April 13, 2006, no pet.) (mem. op.) (four and a half months; appellant stated she was "completely satisfied" with her lawyer's representation); *Manning v. Tex. Dep't of Family & Protective Servs.*, No. 03–04–00451–CV, 2005 WL 1116389, *4 (Tex. App.—Austin May 12, 2005, pet. denied) (mem. op.) (five months; during that time, counsel attended hearings, served discovery requests, and filed more than twelve motions, including a motion for continuance).

Appellant asserts he lost time in which he could have been working to satisfy the service plan and communicating with the Department about his desire to parent his children. However, it is undisputed that the Department knew appellant wanted to complete the service plan and be involved with his children. It is also undisputed that, with one exception, the Department did not expect him to complete the service plan while he was in prison. The exception was the requirement that appellant sign a release, effective immediately, of all information necessary for the Department to obtain information from all past, present, and future service providers. The Department did not present appellant with a form of release to sign. Appellant contends if counsel had been appointed promptly, he "would have had the opportunity to dialogue with the Department and get a copy

of the release that he was expected to sign." However, the Department does not suggest its investigation was impeded or it was otherwise harmed by not having a signed release from appellant. Moreover, appellant's rights were not terminated for failure to complete the service plan. *See* Tex. Fam. Code Ann. § 161.001(1)(O) (predicate ground for termination is "fail[ure] to comply with the provisions of a [service plan]").

We conclude the trial court's delay in appointing a lawyer for appellant probably did not cause the rendition of an improper judgment or prevent appellant from presenting his case on appeal. Therefore, any error in the delay is harmless and not reversible. We overrule appellant's first issue.

## VII. CONCLUSION

Having overruled all of appellant's issues, we affirm the trial court's judgment.

/s/   Ken Wise
Justice

Panel consists of Justices Christopher, Brown, and Wise.